UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JANET KRONEMBERG,

                    Plaintiff,            <u>MEMORANDUM AND ORDER</u>

   -against-                           CV 15-3235 (LDW) (AYS)

WINTHROP UNIVERSITY HOSPITAL,
*et al.*,

                    Defendants.
-------------------------------------------------------X

Wexler, J.

Plaintiff Janet Kronemberg ("Kronemberg") brings this action against defendants Winthrop University Hospital ("Winthrop"), Patrice Villa ("Villa"), and Enrico Perez ("Perez"), asserting claims for discrimination based on race/color and retaliation under 42 U.S.C. § 1981; Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and New York State Human Rights Law, Executive Law § 296 ("NYSHRL"). Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Kronemberg opposes the motion.[1]

---

[1] Although the Complaint also asserts discrimination and retaliation in violation of Nassau County Human Rights Law ("NCHRL"), Title C-2, § 21.98, Kronemberg does not argue in support of these claims. Indeed, Kronemberg states, in her opposing brief, that her action is brought under § 1981, Title VII, and NYSHRL; she makes no reference to NCHRL. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Plaintiff's Mem."), at 1. Accordingly, these claims are deemed abandoned.

I. <u>BACKGROUND</u>

For purposes of this decision, the allegations of the Complaint can be summarized as follows. In or about June 1996, Kronemberg, an African-American female, began employment with Winthrop as a Registered Vascular Technologist in its Vascular Lab. Complaint ¶¶ 10, 14. In or about February 2011, Kronemberg was transferred to the Radiology Department, which had merged with the Vascular Lab, and began reporting to Villa, an Ultrasound Manager. *Id.* ¶¶ 12, 16-18. Once Villa became Kronemberg's supervisor, Kronemberg began to experience discriminatory treatment because of her race and color in that (1) Villa denied her request for the day off on December 25, 2011; (2) Villa altered her 2011 performance evaluation and failed to provide her with a copy of the evaluation; (3) Villa ignored her seniority by asking other employees to perform duties for which she was responsible; (4) Villa enrolled her in staff development training that others were not required to complete; and (5) she did not receive a salary increase for 2012. *Id.* ¶ 18.

In November 2011 and March 2012, Kronemberg filed complaints with Winthrop's Human Resources Department as a result of Villa's discriminatory acts. *Id.* ¶ 19. On June 6, 2012, after Winthrop and Perez failed to take action, Kronemberg filed her first administrative complaint with the New York State Division of Human Rights ("SDHR"), alleging retaliation and discrimination on the basis of race, color, and sex (the "FAC"). *Id.* ¶ 20. She cross-filed the FAC with the United States Equal Employment

Opportunity Commission ("EEOC"). *Id.*; *see* Declaration of Mary Ellen Donnelly ("Donnelly Decl."), Exh. B. On December 6, 2012, the SDHR issued a Determination and Order After Investigation (the "December 6, 2012 D&O"), finding no probable cause to believe that Winthrop "has engaged in or is engaging in the unlawful discriminatory practice complained of." Donnelly Decl., Exh. C (December 6, 2012 D&O, at 1).

Thereafter, in an "immediate response" to Kronemberg's filing of the FAC, defendants retaliated against her for "exercising her right to oppose discriminatory practices including . . . negative evaluations leading to her termination on March 11, 2014." Complaint ¶¶ 21, 57. Defendants' ongoing retaliation included, *inter alia*, (1) daily verbal abuse and false accusations aimed at disrupting her employment; (2) rejecting her job certification and suspending her employment from March 1, 2013 through March 31, 2013, even though she claims to have been properly certified, and requiring her to take the certification exam twice; (3) issuing continuous false write ups and poor evaluations despite satisfactory patient care; and (4) creating special and different rules to apply to her. *Id.* ¶¶ 23-44, 49, 51, 56-57. Kronemberg claims that before Villa became her supervisor, she had "stellar evaluations." *Id.* ¶ 36. But after she filed the FAC, she was subjected to a "wave of warnings, re-evaluations, and *Performance Improvement Plans*," which were a "pattern of false over documentation" against her to manufacture and create a false record of her abilities and performance. *Id.* ¶ 52 (emphasis in original). She alleges generally that "Defendants' pattern of retaliatory

acts were an immediate response to [the FAC], as evidenced by the drastic change in [her] performance review, which included all evaluations after February 2011, and overall differential treatment of [her]." *Id.* ¶ 57.

As for the job certification and suspension, Kronemberg maintains that she was told in 2011 that all employees in the Radiology Department were required to take a registry exam to become certified in their field by March 1, 2013. *Id.* ¶ 23. As a result, in July 2012, Kronemberg took an exam and acquired her credentials through the Cardiovascular Credentialing International ("CCI"). *Id.* ¶ 25. At the same time, she told Villa that she had taken the exam and acquired her credentials through CCI. *Id.* ¶ 26. Despite being aware that Kronemberg had acquired her accreditation through CCI, Villa informed Kronemberg in February 2013 that her credentials were not acceptable and that she needed to retake the exam through a different credentialing organization, the American Registry of Diagnostic Medical Sonographers ("ARDMS"). *Id.* ¶ 31. Kronemberg maintains that she was the only individual forced to take the exam a second time. *Id.* ¶ 32. Kronemberg was then suspended from March 1, 2013 through March 31, 2013, but she was reinstated once she passed the exam through ARDMS. *Id.* ¶ 34. Thereafter, Villa "continuously gave [Kronemberg] write-ups for alleged minor infractions, such as computer errors." *Id.* ¶ 35. In contrast, "other employees" who committed such infractions were not disciplined or written up. *Id.*

As for poor evaluations, in or about February 2014, Kronemberg received "yet another negative and disparaging evaluation and *Performance Improvement Plan* from [Villa] indicating that [Kronemberg] was not qualified and inadequately performed her job duties." *Id.* ¶ 37 (emphasis in original). Plaintiff contested the evaluation and Performance Improvement Plan to Villa, refusing to sign the inaccurate evaluation. *Id.* ¶ 38. As a result of her refusal to sign, Villa suspended Kronemberg without pay and instructed her to turn in her identification badge. *Id.* ¶ 39. Despite her request, Kronemberg was not provided a written explanation of the authority, rule, or regulation supporting her suspension. *Id.* ¶ 40. She asserts, "[u]pon information and belief," that no rule or policy allowed suspension for failure to sign an evaluation. *Id.* ¶ 41. In fact, she was not suspended when she refused to sign a "similar evaluation" by Villas in or about May 2012, prior to her filing the FAC. *Id.* ¶ 42. On February 13, 2014, Roseanne Caldon, an Employee Relations manager, called Kronemberg to return to work, informing her that she did not have to sign the evaluation. *Id.* ¶ 43. Nevertheless, when Kronemberg returned to work on February 14, 2014, she was told that her suspension was not lifted and that she should report to Perez. *Id.* ¶ 44. She then met with Perez, who advised her that she would not be returning to work, although he did not provide her anything in writing. *Id.* ¶¶ 45-48. Kronemberg claims that Perez "furthered the discrimination and retaliation . . . and reinforced [Villa's] unlawful actions." *Id.* ¶ 49.

6

Eventually, on March 11, 2014, Kronemberg received a letter from Villa terminating her employment with Winthrop. *Id.* ¶ 50.

According to Kronemberg, from January 1, 2011 to June 23, 2014, Winthrop had at least 21 technicians. *Id.* ¶ 55. Of those, 14 were "white"; three "Asian/Pacific Islander"; two "black"; one "Hispanic"; and two "other or not specified." *Id.* She asserts, "[u]pon information, and belief," that "none of the other white technicians" were subjected to the "level of abuse" and "over documentation" to which she was subjected. *Id.* ¶ 56. In all, defendants subjected her to constant mistreatment that created an oppressive and hostile work environment that was ongoing from February 2011, when Villa became her supervisor, until she was terminated in March 2014. *Id.* ¶¶ 57-58.

On April 15, 2014, Kronemberg filed a second administrative complaint with the SDHR, cross-filing the charge with the EEOC (the "SAC"). *Id.* ¶ 7.[2] According to the Complaint, the SAC "alleg[ed] her wrongful termination due to the Defendants' *racial animus*." *Id.* (emphasis added). However, as defendants point out, the SAC actually charged "unlawful employment practices . . . based on retaliation and opposing discriminatory practices." Donnelly Decl., Exh. D (Charge of Discrimination ¶ 1). On October 9, 2014, the SDHR issued a Determination and Order After Investigation (the "October 9, 2014 D&O"). *See id.* ¶ 5. Neither party has submitted a copy of the October 9, 2014 D&O, although defendants concede that the SDHR found "probable cause to

---

[2]This paragraph of the Complaint is the first of two paragraphs numbered "7."

believe that [Winthrop] engaged in an unlawful discriminatory practice of which [Kronemberg] complained." *Id.*; *see* Complaint ¶ 7.[3] Eventually, the EEOC issued Kronemberg a "Dismissal and Notice of Rights," dated March 2, 2015, following her successful request to the SDHR for a dismissal based on administrative convenience. Complaint ¶¶ 8-9. Kronemberg then filed this action on June 3, 2015.

Defendants move to dismiss, arguing, *inter alia*, that (1) the Title VII claims for discrimination and hostile work environment based on race/color must be dismissed for failure to exhaust and as time-barred; (2) the Complaint fails to plead claims for discrimination and hostile work environment based on race/color and retaliation; and (3) the § 1981 and NYSHRL claims for discrimination and hostile work environment based on race/color are untimely to the extent that they are based on conduct that occurred before June 3, 2012—three years before Kronemberg filed this action.

## II. DISCUSSION

A. Motion to Dismiss Standard

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court held that to avoid dismissal a plaintiff is required to plead enough facts "to state a claim for relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). While heightened factual pleading is not required, *Twombly* holds that a

---

[3]This paragraph of the Complaint is the second of two paragraphs numbered "7."

"formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. On a motion to dismiss, the court must, as always, assume that all allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Plair v. City of New York*, 789 F. Supp. 2d 459, 463 (S.D.N.Y. 2011). However, the court must ensure that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 57 (2d Cir. 2010). A pleading that does nothing more than recite the elements of a claim, supported by mere conclusory statements, is insufficient to "unlock the doors of discovery." *Iqbal,* 556 U.S. at 678. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Although a motion under FRCP 12(b)(6) is directed only to the sufficiency of the pleading, the court may consider written documents attached to the complaint as well as documents incorporated therein by reference and those of which plaintiff had knowledge and relied upon in commencing the action. *See Brass v. Amer. Film Techn., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993).

B. <u>Discrimination and Hostile Work Environment Claims</u>

    1. <u>Under Title VII</u>

Defendants argue that Kronemberg's Title VII claims for discrimination and hostile work environment based on race/color must be dismissed for failure to exhaust and as time-barred. Title VII requires a plaintiff to exhaust administrative remedies by

timely filing a complaint with the EEOC, obtaining a right-to-sue notice, and filing an action within 90 days of receipt of the notice. 42 U.S.C. § 2000e–5(e)-(f); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *3 (D. Conn. Dec. 4, 2015). "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998); *Walsh v. Nat'l Westminster Bancorp., Inc.*, 921 F. Supp. 168, 171 (S.D.N.Y. 1995). "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (quoting *Butts*, 990 F.2d at 1402); *see also Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) ("In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.' " (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)).

According to defendants, Kronemberg failed to raise claims for discrimination and hostile work environment based on race/color in the SAC. Kronemberg responds that the

SAC alleged "her wrongful termination due to Defendants' *racial animus*." Plaintiff's Mem., at 7 (emphasis added).

As an initial matter, the Court observes that Kronemberg does not claim to have filed suit within 90 days of receiving a notice of the right to sue as to the FAC's claims of race, color, and sex discrimination. Thus, Title VII claims based on the FAC's claims are barred. Kronemberg's assertion that her SAC alleged discrimination based on "racial animus" is unfounded and belied by the SAC. Although the SAC referenced the FAC and alleged that Kronemberg filed the FAC because she "felt discriminated against . . . because of my race/color and age," Donnelly Decl., Exh D. (Charge of Discrimination ¶ 8), the SAC did not allege discrimination based on race or color. Rather, the SAC explicitly alleged "unlawful discriminatory employment practices . . . based on retaliation and opposing discriminatory practices." *Id.* (Charge of Discrimination ¶ 1). Kronemberg did not assert a claim for discrimination based on "racial animus," as she asserts in her Complaint and opposing brief. Moreover, there is no indication that the SDHR investigation would have, or did, encompass discrimination based on race or color, as was the case with the FAC. Indeed, the SDHR had concluded the investigation of the FAC with a finding of no probable cause to believe that Winthrop "has engaged in or is engaging in the unlawful discriminatory practice complained of." *Id.* Exh. C (December 6, 2012 D&O, at 1). Given Kronemberg's explicit charge of retaliation in the SAC, and the SDHR's December 6, 2012 D&O, the investigation reasonably expected to grow out

of the charge in the SAC likely would not have included (and apparently did not include[4]) a claim of discrimination based on race/color. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222-23 (8th Cir. 1994); *Walsh*, 921 F. Supp. at 171-72.

Accordingly, Kronemberg's Title VII claims for discrimination and hostile work environment based on race/color are dismissed with prejudice.

2. Under § 1981 and NYSHRL

Defendants argue that the Complaint is insufficient to state a claim for discrimination and hostile work environment based on race/color under § 1981 and NYSHRL. For a plaintiff to withstand a motion to dismiss in the Title VII context, the *Iqbal* requirement for facts supporting "plausibility" requires a plaintiff to allege facts "showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original). The same standard applies to Kronemberg's § 1981 and NYSHRL claims. *See id.* at 312; *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 383 (E.D.N.Y. 2013); *Dixon v. Int'l Fed'n of Accountants*, No. 09 CV 2839 (HB), 2010 WL 1424007, at *3 (S.D.N.Y. Apr. 9, 2010).

---

[4] Neither defendants nor Kronemberg provided this Court with a copy of the October 9, 2014 D&O. Nevertheless, Kronemberg does not claim that the decision indicates an investigation or determination of claims other than alleged retaliation.

For purposes of this motion, defendants do dispute that Kronemberg's allegations would be sufficient to establish the first three prongs of a *prima facie* case of discrimination, that is, that she belongs to a protected class, was qualified, and suffered an adverse employment action. Rather, defendants argue that the allegations fail to give plausible support to the conclusion that any adverse employment action occurred under circumstances giving rise to an inference of discriminatory motivation or intent. Defendants argue that Kronemberg relies on conclusory allegations that she was treated differently than similarly situated employees and on a statistical composition of Winthrop's workforce, neither of which plausibly suggests that defendants were motivated by Kronemberg's race/color or that they acted with discriminatory intent.

Upon consideration, the Court concludes that Kronemberg fails sustain her *minimal* burden of showing facts suggesting an inference of discriminatory motivation or intent. As the Second Circuit recently observed in *Littlejohn*, "an inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge' "; or "when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 at 312-13 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). As

pleaded, defendants' actions do not directly indicate race/color bias. There are no allegations that defendants criticized Kronemberg's performance in ethnically degrading terms, made invidious comments about others in the protected group, or replaced Kronemberg with an individual outside the protected group. The sequence of events leading to her termination does not suggest race/color bias. While Kronemberg alleges that "none of the other white technicians" was subjected to the "level of abuse, and over documentation" to which she was subject, Complaint ¶ 56, she makes this allegation on "information and belief" and does not sufficiently state how these other technicians were similarly situated with regard to "abuse" and "over documentation." *See id.*; *see also* ¶ 63 ("Defendants discriminated against [Kronemberg] by supervising [her] in a harsher manner than similarly situated White employees . . . ."); ¶ 64 ("Upon information and belief no similarly situated White employee was treated in this same manner."). Indeed, a complaint is properly dismissed where, as here, it is virtually "devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants." *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L (SJF) (AKT), 2014 WL 6473527, at 12 (E.D.N.Y. Nov. 17, 2014). Thus, the Complaint fails to state a claim for discrimination based on race/color.

Furthermore, Kronemberg's allegations are not sufficient to show the creation of a hostile work environment *based* on race/color, as required to state a hostile work

environment claim. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (to state claim for hostile work environment, plaintiff must plead facts tending to show conduct that "(1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected class].' " (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)); *see also Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment."). Thus, the Complaint fails to state a claim for hostile work environment based on race/color.

Accordingly, Kronemberg's discrimination and hostile work environment claims under § 1981 and NYSHRL are dismissed without prejudice to repleading within 45 days.[5]

---

[5]Based on this determination, the Court need not consider defendants' additional argument that the § 1981 and NYSHRL claims for discrimination and hostile work environment based on race/color are untimely to the extent that they are based on conduct that occurred before June 3, 2012. However, the Court notes that a four-year limitations period applies to § 1981 claims, not a three-year limitations period, as defendants argue. *See, e.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) ("Claims under Section 1981 are subject to a four-year statute of limitations period.").

C. <u>Retaliation Claims</u>

Defendants argue that the Complaint is insufficient to state a claim for retaliation under § 1981, Title VII, and NYSHRL. To establish a *prima facie* case of retaliation, a plaintiff must allege facts showing "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *see also Whethers*, 956 F. Supp. 2d at 383 ("[R]etaliation claims under § 1981 are generally analyzed in the same manner as under Title VII.").

Defendants argue that Kronemberg fails to plead any facts plausibly suggesting a causal connection between her alleged protected activity and any adverse employment action. A causal connection can be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). No bright line defines—for purposes of a *prima facie* case—the "outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d

545, 554 (2d Cir. 2001). A matter of months may or may not be considered too long, depending on the circumstances. *See id.* at 554-55 (comparing cases).

Upon consideration, the Court finds that Kronemberg fails to plead facts sufficient to show a causal connection between her alleged protected activity and any adverse employment action. Although Kronemberg alleges that she suffered retaliatory actions, some of which she attributes to Villa, "since" or as "an immediate response" to the FAC,[6] she states only in general terms that she suffered (1) "negative evaluations"; (2) "daily verbal abuse, and false accusations"; (3) "continuous false write ups and poor evaluations"; and (4) "drastic change in [her] performance review, which included all evaluations after February 2011." Complaint ¶¶ 22, 51, 57. For the most part, Kronemberg fails to specify when these actions occurred (let alone the surrounding circumstances) in order to show the onset of retaliatory acts soon enough after the filing of the FAC in June 2012. Other acts are alleged to have occurred many months after she filed the FAC. For instance, it was not until (1) February 2013 when Villa advised Kronemberg that her credentials were unacceptable, leading to her March 1, 2013 through March 31, 2013 suspension, and requiring her to retake the exam, *id.* ¶¶ 31, 34; (2) after the suspension when Villa "continuously gave [Kronemberg] write-ups for alleged minor

---

[6]Notably, Kronemberg alleges that she filed internal complaints with Winthrop in November 2011 and March 2012 regarding race discrimination by Villa, but received no response from Winthrop. Complaint ¶ 19. However, Kronemberg does not allege retaliation based on that protected activity; rather, she claims retaliation based on the filing of the FAC. *See id.* ¶¶ 21, 22, 51, 57, 67, 68.

infractions," *id.* ¶ 35; and (3) February 2014 when Kronemberg received "yet another negative and disparaging evaluation and *Performance Improvement Plan* from [Villa]," *id.* ¶ 37 (emphasis in original). Nevertheless, because the Court cannot say that Kronemberg will be unable to plead facts sufficient to show a causal connection, leave to replead will be permitted.

Accordingly, Kronemberg's retaliation claims under § 1981, Title VII, and NYSHRL are dismissed without prejudice to repleading within 45 days.

### III. CONCLUSION

For the above reasons, defendants' motion to dismiss is granted to the extent that Kronemberg's (1) Title VII claims for discrimination and hostile work environment based on race/color are dismissed with prejudice; (2) § 1981 and NYSHRL claims for discrimination and hostile work environment based on race/color are dismissed without prejudice to repleading within 45 days; and (3) § 1981, Title VII, and NYSHRL claims for retaliation are dismissed without prejudice to repleading within 45 days.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      May 19, 2016