**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                  :
**JANET KRONEMBERG,**                                             :
                                                                  :
                                        **Plaintiff,**            :          **Civil Case No.:**
                    **-against-**                                 :          **15-cv-3235(LDW)(AYS)**
                                                                  :
**WINTHROP UNIVERSITY HOSPITAL,**                                 :          **DECLARATION OF**
**PATRICE VILLA, in her official and individual**                 :          **MARY ELLEN**
**capacity, ENRICO PEREZ, in his official and**                   :          **DONNELLY**
**individual capacity,**                                          :
                                                                  :
                                        **Defendants.**           :
                                                                  :
                                                                  :
-----------------------------------------------------------------x

Mary Ellen Donnelly, pursuant to 28 U.S.C. § 1746, declares under penalty of

perjury that the foregoing is true and correct:

1.      I am a member of the firm Putney, Twombly, Hall & Hirson LLP and I am an

attorney duly admitted to practice law before this Court.  I submit this Declaration on behalf of

Defendants, Winthrop University Hospital (the "Hospital"), Patrice Villa and Enrico Perez

(collectively "Defendants"), in support of their motion to dismiss the Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2.      On June 6, 2012, Plaintiff filed a complaint of discrimination (the "First

Administrative Complaint"), against the Hospital, with the New York State Division of Human

Rights ("SDHR"), which was dual-filed with the United States Equal Employment Opportunity

Commission ("EEOC"), alleging retaliation and discrimination on the basis of race, color and

sex.  Annexed hereto as Exhibit "B" is a copy of the First Administrative Complaint.

3.      On December 6, 2012, the SDHR issued a Determination and Order After

Investigation, finding that there was no probable cause to believe that the Hospital engaged in

any unlawful discriminatory practice about which Plaintiff complained.  Annexed hereto as Exhibit "C" is a copy of the Determination.

4.       On April 15, 2014, Plaintiff filed a complaint with the SDHR alleging that the Hospital retaliated against her (the "Second Administrative Complaint").  Annexed hereto as Exhibit "D" is a copy of the Second Administrative Complaint.

5.       On October 9, 2014, the SDHR issued a Determination and Order After Investigation, finding that probable cause exists to believe that the Hospital engaged in an unlawful discriminatory practice of which Plaintiff complained.

6.       By letter dated November 20, 2014, Plaintiff requested an administrative convenience dismissal of the Second Administrative Complaint on the grounds that Plaintiff intended to pursue her remedies in federal court.  By letter dated November 25, 2014, the Hospital objected to Plaintiff's request for an administrative convenience dismissal on the grounds that it intended to file a request to reopen the Determination and Order After Investigation based upon errors of fact and law.  Thus, the Hospital would be unduly prejudiced by an administrative convenience dismissal.

7.       On December 3, 2014, SDHR Administrative Law Judge Edward Luban issued a proposed Recommended Order dismissing the Second Administrative Complaint on the grounds of administrative convenience.

8.       On June 3, 2015, Plaintiff commenced this action in the United States District Court, Eastern District of New York, by filing the Original Complaint.  Annexed hereto as Exhibit "A" is a copy of the Original Complaint.

9.       By letter dated July 31, 2015, Defendants requested a pre-motion conference to obtain permission to file a motion to dismiss Plaintiff's Complaint in its entirety.  Annexed hereto as Exhibit "E" is a copy of Defendants' July 31, 2015 letter.

10.    By letter dated August 7, 2015, Plaintiff opposed Defendants' pre-motion conference request.  Annexed hereto as Exhibit "F" is a copy of Defendants' August 7, 2015 letter.

11.    On September 3, 2015, the Court waived the pre-motion conference and granted Defendants permission to move to dismiss the Complaint in its entirety.

12.    On November 2, 2015, Defendants moved to dismiss the Original Complaint.

13.    By Order dated May 19, 2016 (Docket Entry No. 21) (the "Order"), the Court granted Defendants' motion to dismiss Plaintiff's Original Complaint.

14.    On July 1, 2016, Plaintiff filed the Amended Complaint.

15.    Annexed hereto as Exhibit "G" is a copy of Plaintiff's 2011 Performance Evaluation, which is referenced in the Complaint.

16.    Annexed hereto as Exhibit "H" is a copy of Plaintiff's May 7, 2012 Performance Re-Evaluation, which is referenced in the Complaint.

17.    Annexed hereto as Exhibit "I" is a copy of Plaintiff's 2013 Performance Evaluation and a second Performance Improvement Plan ("Second PIP"), which is referenced in the Complaint.

18.    Annexed hereto as Exhibit "J" is a copy of the Amended Complaint.

Dated: New York, New York
       October 18, 2016

MARY ELLEN DONNELLY

Exhibit A

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANET KRONEMBERG,                                              DOCKET NO.: CV-15-3235

                                    Plaintiff,

                        - against –

WINTHROP UNIVERSITY HOSPITAL,
PATRICE VILLA, in her office and individual                    **COMPLAINT**
capacity, ENRICO PEREZ, in his official and
individual capacity,

                                    Defendants.                *JURY TRIAL DEMANDED*

PLAINTIFF, JANET KRONEMBERG, by and through her attorneys, THE LAW

OFFICES OF FREDERICK K. BREWINGTON, as and for her Complaint against the

Defendants, states and alleges as follows:

## PRELIMINARY STATEMENT

1.       This is a civil action seeking monetary relief (including past and on going

economic loss), injunctive relief, declaratory judgment, compensatory and punitive

damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended),

42 U.S.C. §1981, New York State's Human Rights Law, Executive Law § 296 on the basis of

Plaintiff's race and color, and retaliation, and Breach of Contract.

2.       Specifically, the Plaintiff alleges that the collective Defendants negligently,

wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of her employment, position, title, benefits, and pay through discrimination, retaliation, misrepresentation, misinformation, harassment and character assassination.

3.      Said acts were done knowingly with the consent and condonation of the WINTHROP UNIVERSITY HOSPITAL,  Defendant PATRICE VILLA, in her official and individual capacity, and ENRICO PEREZ, in his official and individual capacity, with the express purpose of removing and silencing the Plaintiff, and generally violating her rights as protected by the United States and New York State Constitutions, and Federal, State, and local statutes, rules and regulations.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

5.      This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C.§ 1367.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiff's residence, and the Defendant is a Corporation conducting business in the State of New York, within the various counties of New York, including but not limited to Nassau and Suffolk.

7.      Prior hereto, on April 15, 2014 , Plaintiff filed a Charge of Discrimination 10168286 against Defendant WINTHROP UNIVERSITY HOSPITAL with the New York

2

State Division of Human Rights (hereinafter "NYSDHR") alleging her wrongful termination due to the Defendants' racial animus.  Plaintiff also cross filed a charge with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16G-2015-01163.

7.     On October 9, 2014, the NYSDHR found Probable Cause against Defendant WINTHROP UNIVERSITY HOSPITAL.

8.     Plaintiff requested, and on December 1, 2014, the Honorable Edward Luban, ALJ of the New York State Division of Human Rights,  issued a Recommended Order of Dismissal for Administrative Convenience.

9.     On March 5, 2105 Plaintiff received a *Notice of Right to Sue Within 90 Days*, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2015-01163 (copy annexed hereto Exhibit A).  As of the filing date of this complaint, ninety days from the date of receipt of the *Notice of Right to Sue* has not yet passed.

## PARTIES

10.     Plaintiff, JANET KRONEMBERG (hereinafter "PLAINTIFF" or MS. KRONEMBERG), at all times relevant in this Complaint, is an African-American female, and a citizen of the United States of America.  Plaintiff resides in the County of Suffolk, State of New York, who at all times complained of herein was an employee of WINTHROP UNIVERSITY HOSPITAL.

11.     At all times relevant in this Complaint, Defendant WINTHROP UNIVERSITY

HOSPITAL (hereinafter "WINTHROP" and/or "HOSPITAL"), is a health facility, and

domestic not for profit corporation, doing business in 222 Station Plaza North, Mineola,

Nassau County, State of New York.

12.     At all times relevant in this Complaint, Defendant PATRICE VILLA

(hereinafter "VILLA") sued here in her official and individual capacity, is a Caucasian-

American female, and employed by Defendant WINTHROP as an Ultrasound Manager in

Defendant's Radiology Department, and was Plaintiff's immediate supervisor.

13.     At all times relevant in this Complaint, Defendant ENRICO PEREZ

(hereinafter "PEREZ") sued here in his official and individual capacity, is upon information

and belief a Caucasian-American make, and employed by Defendant WINTHROP as the

Administrative Director of the Department of Radiology, and was Defendant VILLA's

immediate supervisor.

## FACTUAL ALLEGATIONS

14.     MS. KRONEMBERG began her employment with Defendant WINTHROP

in or about June 1996 as a Registered Vascular Technologist in the Hospital's Vascular Lab.

15.     At all times during her employment, Plaintiff maintained a stellar

employment record, which included positive reviews and evaluations.

16.     In or about January 2011, the Hospital merged the Vascular Lab with the Radiology Department.

17.     In or about February 2011, MS. KRONEMBERG was transferred to the Radiology Department, but retained her title as a Registered Vascular Technologist.

18.     It was at this time that Defendant VILLA became Plaintiff's supervisor. It was also at this time when Plaintiff began to experience discriminatory treatment because of her race and color . It was Plaintiffs' belief that she was being discriminated against by Defendant VILLA for the following reasons:

- Defendant VILLA denied PLAINTIFF'S request that she not work on December 25, 2011

- Defendant VILLA altered PLAINTIFF's 2011 performance evaluation, and failed to provide PLAINTIFF with a copy of the evaluation;

- Defendant VILLA ignored PLAINTIFF's seniority by asking other personnel to perform duties for which PLAINTIFF was responsible;

- Defendant VILLA enrolled PLAINTIFF in staff development training that others were not required to complete;

- PLAINTIFF did not receive a salary increase for 2012

19.     As a result of Defendant VILLA's discriminatory treatment, PLAINTIFF filed a complaint with Defendant HOSPITAL's Humna Resources Department in November 2011 and March 2012, but received no response.

20.     Although MS. KRONEMBERG complained to Defendants about this

5

treatment, no action was taken by Defendant PEREZ or WINTHROP, forcing PLAINTIFF to file a Complaint with the New York State Division of Human Rights on or about June 6, 2012, State Division of Human Rights Case No.: 10155470. On December 6, 2012, the Division reached a No Probable Cause determination.

21.     Since the filing of the Division of Human Rights Complaint of discrimination, PLAINTIFF has been retaliated against for exercising her right to oppose discriminatory practices including but not limited to negative evaluations leading to her termination on March 11, 2014.

22.     Since the filing of her first complaint with the Division of Human Rights, Defendant VILLA has created a discriminatory hostile work environment for PLAINTIFF, and has continued to retaliate against PLAINTIFF, including, but not limited to issuing continuous write ups for alleged minor infractions in an effort to terminate PLAINTIFF's employment.

23.     In 2011, all employees in the Radiology Department were instructed that they had one year to take the registry exam to obtain either the Registered Vascular Technologists (RVT) or Registered Vascular Specialist (RVS) credentials. This was to be done no later than March 1, 2013.

24.     At no time did Defendants specify through which institution the credentials were to be acquired.

6

25.     In July 2012, PLAINTIFF took the exam,  and acquired her credentials through Cardiovascular Credentialing International (CCI) – well before the deadline of March 1, 2013.

26.     In July 2012, PLAINTIFF informed Defendant VILLA that she had taken the exam, and acquired her credentials.

27.     Upon information and belief, Cardiovascular Credentialing International is a recognized diagnostic imaging society, and credentials through CCI have previously been recognized by Defendant WINTHROP, and is recognized in the medical field.

28.     CCI is an independent not-for-profit corporation established for the purpose of administering credentialing examinations as an independent credentialing agency. CCI began credentialing cardiovascular professionals in 1968.

29.     CCI is governed by a Board of Trustees and a Board of Advisors. The CCI Board of Advisors is comprised of representatives nominated by the following organizations to represent their cardiovascular specialty field:

- American College of Cardiology (ACC)

- American College of Phlebology (ACP)

- American Society of Echocardiography (ASE)

- Heart Rhythm Society (HRS)

- Society for Cardiovascular Angiography and Interventions (SCAI)

- Society of Diagnostic Medical Sonography (SDMS)

- Society of Invasive Cardiovascular Professionals (SICP)

- Society for Vascular Ultrasound (SVU)

30.     In June of 2008, CCI was accredited by the American National Standards Institute under the ANSI/ISO/IEC 17024 Program. The ANSI accreditation was awarded to CCI's RCES, RCIS, RCS, and RVS certification programs. The CCT, CRAT, RCCS, and RPhS certification programs were approved for ANSI/ISO/IEC 17024 accreditation in December 2011. Click here to see the details.

31.     Although Defendant VILLA was aware that PLAINTIFF had acquired her credentials through CCI, it was not until months after they received notice, in February of 2013, that Defendant VILLA informed PLAINTIFF that the credentials she had obtain through CCI, were unacceptable, and that PLAINTIFF had to re-take the exam and obtain her credentials through the American Registry of Diagnostic Medical Sonographers (ARDMS).

32.     PLAINTIFF was the only individual who was being forced to take this exam a second time.

33.     PLAINTIFF informed Defendant VILLA that she had already taken the exam and that the she was qualified and certified.  Upon information and belief, both CCI and ARDMS offered the same credentialing, and, therefore, PLAINTIFF expressed her belief

8

that these actions were retaliatory and discriminatory, and declined to take the examination a second time.

34.    PLAINTIFF was then suspended for the period March 1, 2013 and March 31, 2013. With this punishment, in order to be reinstated, PLAINTIFF agreed to take the exam again at ARDMS. PLAINTIFF passed said exam and was reinstated.

35.    Thereafter, Defendant VILLA continuously gave PLAINTIFF write-ups for alleged minor infractions, such as computer input errors. Upon information and belief, other employees who actually committed infractions, were not subject to this treatment. PLAINTIFF was the only employee being subjected to this disciplinary action.

36.    Prior to Defendant VILLA becoming PLAINTIFF's supervisor, PLAINTIFF had stellar evaluations.

37.    In or about February 2014, PLAINTIFF received yet another negative and disparaging evaluation and *Performance Improvement Plan* from Defendant VILLA indicating that PLAINTIFF was not qualified and inadequately performed her job duties.

38.    PLAINTIFF informed Defendant VILLA that the evaluation was not accurate, took exception to this evaluation and refused to attach her signature to it.

39.    On or about February 11, 2014, MS. KRONEMBERG was advised by Ms. VILLA that PLAINTIFF was being suspended, without pay, for refusal to sign the evaluation. Defendant VILLA instructed PLAINTIFF to turn in her employee badge.

40.     Although she requested, PLAINTIFF was given nothing in writing to explain on what authority, rule, regulation or power, she was being suspended, nor was she informed of what policy of WINTHROP she had violated resulting in her suspension.

41.     Upon information and belief, there is no rule in Defendant WINTHROP's employee handbook or policy that would allow an employee suspension for failure to sign an evaluation.

42.     In or about May 2012, prior to PLAINTIFF filing her 2012 Complaint with the Division of Human Rights, Defendant VILLA authored a similar evaluation, with which PLAINTIFF did not agree, and did not sign. However, at that time PLAINTIFF was not suspended for failure to sign the evaluation. It is PLAINTIFF's position that Defendant VILLA's action in this situation was in retaliation for complaining about the discrimination she had been subjected to by Defendant VILLA.

43.     On or about February 13, 2014 PLAINTIFF received a telephone call from Ms. Roseanne Caldon, Manager, Employee Relations, advising PLAINTIFF to return to work on Friday, February 14, 2014. Ms. Caldon further told MS. KRONEMBERG that PLAINTIFF did not have to sign the evaluation.

44.     Believing that the suspension had been lifted, on February 14, 2014 when PLAINTIFF arrived at Defendant WINTHROP, she learned that what she had been told by Ms. Caldon was inaccurate; her suspension was not lifted, and she was not there to return

to work, as she was mislead to believe.  PLAINTIFF was instructed to meet with the

Defendant PEREZ.

45.    PLAINTIFF then spoke with Defendant PEREZ, who informed PLAINTIFF

that she would not be returning to work.  Despite PLAINTIFF having filed a previous

complaint, Defendant PEREZ then instructed PLAINTIFF to write a list of what

PLAINTIFF were problems about the Radiology Department.

46.    In response, PLAINTIFF stated that she needed time to gather dates and

times.  In response Defendant PEREZ stated "then you can go home and I will call you on

Tuesday [February 18, 2014] and you will get paid for 1 hour today."

47.    PLAINTIFF stated to Defendant PEREZ that she was instructed by Ms.

Caldon to come into work that date. In response Defendant PEREZ stated "I apologize, but

you will not be working today." PLAINTIFF was shocked.

48.    At that meeting, Defendant PEREZ did not provide anything in writing

regarding the reason for PLAINTIFF's suspension, but gave PLAINTIFF a copy of the

contested evaluation and *Performance Improvement Plan* (PIP).

49.    Defendant PEREZ furthered the discrimination and retaliation, and failed to

intervene on PLAINTIFF's behalf, failed to follow rules, protocol, condoned and re-

enforced Defendant VILLA's unlawful actions.

50.    On March 11, 2014, PLAINTIFF received a letter from Defendant VILLA

terminating PLAINTIFF from her position at WINTHROP without any further explanation.

51.     Subsequent to her filing of the original complaint of discrimination in June 2012, MS. KRONEMBERG has been retaliated against with a barrage of items, including, but not limited to:

- daily verbal abuse, and false accusations that were regular and aimed at disrupting PLAINTIFF'S employment.
- rejecting PLAINTIFF's certification.
- suspending PLAINTIFF even though she was certified.
- requiring PLAINTIFF to get certified twice.
- depriving PLAINTIFF of access to her job and pay.
- issuing continuous false write ups and poor evaluations, despite satisfactory patient care.
- creating special and different rules to apply to PLAINTIFF.
- requiring PLAINTIFF to complete the PIP program despite MS. KRONEMBERG's successful twenty-five (25) year record as an RVT, and successful eighteen (18) year tenure at Defendant HOSPITAL.
- misleading PLAINTIFF about her work status

52.     The wave of warnings, re-evaluations, and *Performance Improvement Plans* were a pattern of false over documentation against PLAINTIFF to manufacture, and create a false record of PLAINTIFF'S abilities, and performance.

53.     When PLAINTIFF raised concerns about this constant level of abuse and over documentation to Human Resources, her complaints and concerns were not investigated by Human Resources.

54.     Prior to 2011, when PLAINTIFF was placed under a new supervisor, she had 18 years of satisfactory performance and service as a professional.

12

55. From January 1, 2011, to June 23, 2014, WINTHROP had at least twenty one (21) technicians.  Of that number, fourteen (14) were white, three (3) were Asian/Pacific Islander, two (2) were Black, one (1) was Hispanic and two (2) were other or not specified.

56. Defendant VILLLA intentionally targeted PLAINTIFF based on her race, color and because she opposed discrimination. Upon information, and belief, none of the other white technicians were subjected to the level of abuse, and over documentation that PLAINTIFF was subjected to.

57. Defendants' pattern of retaliatory acts were an immediate response to MS. KRONEMBERG's initial Complaint, as evidenced by the drastic change in PLAINTIFF'S performance review, which included all evaluations after February 2011, and overall differential treatment of PLAINTIFF.

58. Defendant subjected PLAINTIFF to a hostile work environment that was ongoing from February 2011, when Defendant VILLA became PLAINTIFF's immediate supervisor, until the March 2014, when PLAINTIFF was terminated by Defendant VILLA.

59. Defendants' acts created an oppressive environment for MS. KRONEMBERG in her work place, and the constant mistreatment manufactured a hostile work environment, about which she complained.

60. Defendants have denied Plaintiff equal terms, conditions and privileges of employment, because of Plaintiff's race and color and in retaliation for complaining about

discrimination in the workplace.

## AS AND FOR A FIRST COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

61.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1

through 60 inclusive of this Complaint, with the same force and effect as though herein

fully set forth herein.

62.     The Defendants WINTHROP, VILLA and PEREZ, through their agents and

employees, discriminated and retaliated against the Plaintiff in her employment based on

Plaintiff's race and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, as amended, and in retaliation for complaining about discrimination in the work

place.

63.     Defendants discriminated against PLAINTIFF by supervising Plaintiff in a

harsher manner than similarly situated White employees, thereby subjecting Plaintiff to

wrongful differential treatment.  As a result of such treatment, PLAINTIFF has been

subjected to a hostile work environment, and treatment different from other similarly

situated White employees.

64.     Plaintiff's employment was constantly being threatened. Upon information

and belief no similarly situated White employee was treated in this manner.

65.     In or about February 2011, MS. KRONEMBERG was transferred to the

14

Radiology Department It was at this time that Defendant VILLA became Plaintiff's supervisor. It was also at this time  when Plaintiff began to experience discriminatory treatment. PLAINTIFF was discriminated against because of her race and color. She was also the target of retaliation.

66.    Although MS. KRONEMBERG complained to Human Resources, and to Defendant PEREZ about this treatment, no action was taken by Defendant PEREZ or WINTHROP, forcing PLAINTIFF to file a Complaint with the New York State Division of Human Rights on or about June 6,  2012, State Division of Human Rights Case No.: 10155470.

67.    Since the filing of the Division of Human Rights Complaint of discrimination, PLAINTIFF has been retaliated against for exercising her right to oppose discriminatory practices including but not limited to negative evaluations leading to her termination on March 11, 2014.

68.    Since the filing of her complaint with the Division of Human Rights, Defendant VILLA has taken ongoing and regular wrongful actions, and intentionally created a hostile work environment for PLAINTIFF, and has continued to retaliate against PLAINTIFF, including, but not limited to issuing continuous write ups for alleged minor infractions in an effort to harm PLAINTIFF and to create a false record terminate PLAINTIFF's employment.

69.     In 2011, all employees in the Radiology Department were instructed that they had one year to take the registry exam to obtain either the Registered Vascular Technologists (RVT) or Registered Vascular Specialist (RVS) credentials.  There was no stated place or test provider that limited PLAINTIFF from taking the exam through a qualified provider. This was to be done no later than March 1, 2013.

70.     At no time did Defendants specify through which institution the credentials were to be acquired. In July 2012, PLAINTIFF took the exam, and acquired her credentials through Cardiovascular Credentialing International (CCI) -- well before the deadline of March 1, 2013.

71.     Although Defendant VILLA was aware that PLAINTIFF had acquired her credentials through CCI, it was not until February of 2013 that Defendant VILLA informed PLAINTIFF that the credentials she had obtain through CCI, were being rejected, and that PLAINTIFF had to re-take the exam and obtain her credentials through the American Registry of Diagnostic Medical Sonographers (ARDMS).  PLAINTIFF was the only individual who was being forced to take this exam a second time.

72.     PLAINTIFF informed Defendant VILLA that she had already taken the exam and that the she was qualified and certified and, was once again being subject to abuse, discrimination and retaliation, therefore, PLAINTIFF complained and declined to take the examination a second time. Nothing was done about her complaint.

16

73.    Because PLAINTIFF refused to be abused, and advised she would not take the credentialing examination a second time, PLAINTIFF was summarily suspended for the period March 1, 2013 and March 31, 2013. Under the threat of the loss of her livelihood, in order to be reinstated, PLAINTIFF agreed to take the exam again at ARDMS. PLAINTIFF passed said exam and was reinstated.

74.    Thereafter, Defendant VILLA continuously gave PLAINTIFF write-ups for alleged minor infractions, such as computer input errors

75.    In or about February 2014, none of PLAINTIFF's complaints had been acted upon by Defendant WINTHROP. Then, PLAINTIFF received yet another negative and disparaging evaluation and *Performance Improvement Plan* from Defendant VILLA indicating that PLAINTIFF was not qualified and inadequately performed her job duties.

76.    PLAINTIFF took great exception to this evaluation and declined to attach her signature to it.

77.    Without notice, on or about February 11, 2014, MS. KRONEMBERG was advised by Ms. VILLA that PLAINTIFF was being suspended, without pay, for refusal to sign the evaluation.

78.    Although she requested, PLAINTIFF was given nothing in writing to explain why her pay was being taken, and she was being suspended, nor was she informed of what policy of WINTHROP she had violated resulting in her suspension.

79.     PLAINTIFF again spoke with Defendant PEREZ, who informed PLAINTIFF that she would not be returning to work. Despite PLAINTIFF's previous complaints, Defendant PEREZ then instructed PLAINTIFF to write a list of what PLAINTIFF were problems about the Radiology Department.

80.     In response, PLAINTIFF stated that she needed time to gather dates and times. In response Defendant PEREZ stated "then you can go home and I will call you on Tuesday [February 18, 2014] and you will get paid for 1 hour today."

81.     Defendant PEREZ failed in intervene on PLAINTIFF's behalf, failed to follow rules, protocol, condoned, and re-enforced Defendant VILLA's unlawful actions.

82.     On March 11, 2014, PLAINTIFF received a letter from Defendant VILLA informing terminating PLAINTIFF from her position at WINTHROP without any further explanation.

83.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within her employment, loss of income, loss of employment benefits, loss of professional opportunities, loss of reputation, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her personal and professional reputation.

84.     Because of Plaintiff's race and/or color she has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals in

18

that Plaintiff has been treated as stated herein because of her race and/or color.

85.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

### AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1981

86.    PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 85 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

87.    The above discriminatory pattern and practice based on race and color by Defendants WINTHROP, VILLA, and PEREZ, through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

88.    Defendants treatment of PLAINTIFF, as set for in paragraphs 14 through 60 of this Complaint, was solely based on PLAINTIFF's race and/or color, and in retaliation for PLAINTIFF complaining of discriminatory treatment. Defendant VILLA discriminated against PLAINTIFF by supervising PLAINTIFF in a harsher manner than she did similarly White employees, thereby subjecting PLAINTIFF to differential treatment. Although PLAINTIFF complained of the discriminatory and disparate treatment to which she was subjected, Defendants, including PEREZ, sanctioned Defendant VILLA's treatment of

19

Plaintiff.

89.     As a direct and proximate result of said acts, PLAINTIFF has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

90.     Because of PLAINTIFF's color she has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals.

91.     As a result of the Defendants' discriminatory acts, PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFF is entitled to damages sustained to date and continuing in excess of the amount of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD COUNT
## NYS EXECUTIVE LAW §296 and
## NASSAU COUNTY HUMAN RIGHTS LAW

92.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 91 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

93.     The Defendants WINTHROP, VILLA and PEREZ, through their agents and employees, discriminated and retaliated against the Plaintiff in her employment based on

20

Plaintiff's race and color, in violation of Nassau County Human Rights Law Title C-2, §21-9.B, and in retaliation for complaining about discrimination in the work place.

94.    The above discriminatory pattern and practice based on race and/or color, and retaliation by Defendants WINTHROP, VILLA, and PEREZ, their agents and employees violates New York State Law, in particular New York State Executive Law §296 and its subparts.

95.    Defendants discriminated against PLAINTIFF by supervising Plaintiff in a harsher manner than similarly situated White employees, thereby subjecting Plaintiff to differential treatment.  As a result of such treatment, PLAINTIFF has been subjected to a hostile work environment.

96.    Plaintiff's employment was constantly being threatened. Upon information and belief no similarly situated White employee was treated in this manner.

97.    All the actions referenced in the Facts above, and in Counts One and Two, are violations of New York State Executive Law and Nassau County Human Rights Law.

98.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within her employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

99.    Because of Plaintiff's race/color and disability she has been subjected to abuse

and mistreatment as detailed above and has been treated differently than White individuals in that Plaintiff has been treated as stated herein because of her race and color.

100.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of two million($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

June 3, 2015   Plaintiff requests judgment as follows:

  a.    First Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

  b.    Second Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

  c.    Third Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

  d.    Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

  e.    A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

  f.    Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiff to be reinstated, and continue in the position from which Defendants' illegally terminated her; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

h.   An Order granting such other legal and equitable relief as the court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Hempstead, New York
      June 3, 2015

                   LAW OFFICES OF
                   FREDERICK K. BREWINGTON

By: _____
                   FREDERICK K. BREWINGTON
                   *Attorneys for Plaintiff*
                   556 Peninsula Boulevard
                   Hempstead, New York  11550
                   (516) 489-6959



EXHIBIT A

EEOC Form 181 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

**RECEIVED**

| To: | Janet Kronemberg<br>1416 Ackerson Blvd<br>Bay Shore, NY 11706 | From: | New York District Office  MAR  5  2015<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004  **LAW OFFICES OF**<br>**FREDERICK K. BREWINGTON** |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2015-01163 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☐ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☒ | Other (briefly state)  **Charging Pary wishes to pursue matter in Federal District Court.** |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          March 2, 2015

Kevin J. Berry,                                    *(Date Mailed)*
District Director

Enclosures(s)

cc:

WINTHROP UNIVERSITY HOSPITAL                    Johanna C. David, Esq.
Attn: Director of Human Resources               Law Office of Frederick K. Brewington
259 First Street                                556 Peninsula Boulevard
Mineola, NY 11501                               Hempstead, NY 11550

JS 44 (Rev. 1/2013)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JANET KRONEMBERG | WINTHROP UNIVERSITY HOSPITAL, PATRICE VILLA, and ENRICO PEREZ |

**(b)** County of Residence of First Listed Plaintiff   **SUFFOLK**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **NASSAU**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of Frederick K. Brewington
556 Peninsula Boulevard, Hempstead NY 11550
516-489-6959

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question *(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII, 42 USC 1981
Brief description of cause:
Employment discrimination on the basis of race and/or color and retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 6,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   06/03/2015

SIGNATURE OF ATTORNEY OF RECORD
/S/

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

EDNY Revision 1/2013
Case 2:15-cv-0~~CERTIFICATION OF ARBITRATION ELIGIBILITY~~PageID #: 27

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, FREDERICK K. BREWINGTON , counsel for Plaintiff , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

    ☒     monetary damages sought are in excess of $150,000, exclusive of interest and costs,

    ☒     the complaint seeks injunctive relief,

    ☐     the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)    Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: No

2.)    If you answered "no" above:
    a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? Yes

    b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? Yes

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?
         (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
    ☒    Yes        ☐    No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
    ☐    Yes    (If yes, please explain)    ☒    No

I certify the accuracy of all information provided above.

Signature: /S/ Frederick K. Brewington

AO 440 (Rev 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| JANET KRONEMBERG | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| | ) |
| WINTHROP UNIVERSITY HOSPITAL, PATRICE | ) |
| VILLA in her official and individual capacity, ENRICO | ) |
| PEREZ, in his official and individual capacity. | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Winthrop University Hospital, 222 Station Plaza North, Mineola, New York 11501
Patrice Villa, 222 Station Plaza North, Mineola, New York 11501
Enrico Perez, 222 Station Plaza North, Mineola, New York 11501

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: LAW OFFICES OF
FREDERICK K. BREWINGTON
556 Peninsula Boulevard
Hempstead, New York 11550

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*


                                         _____
                                              *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

# Exhibit B



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>JANET KRONEMBERG,<br><br>v.<br><br>WINTHROP UNIVERSITY HOSPITAL, | **VERIFIED COMPLAINT**<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10155470** |

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

JANET KRONEMBERG,

Complainant,

v.

WINTHROP UNIVERSITY HOSPITAL,

Respondent.

**VERIFIED COMPLAINT**
Pursuant to Executive Law,
Article 15

Case No.
**10155470**

Federal Charge No. 16GB203295

 I, Janet Kronemberg, residing at 1416 Ackerson Blvd, Bay Shore, NY, 11706, charge the
above named respondent, whose address is 259 First St., Mineola, NY, 11501 with an unlawful
discriminatory practice relating to employment in violation of Article 15 of the Executive Law of
the State of New York (Human Rights Law) because of race/color, sex, opposed
discrimination/retaliation.

 Date most recent or continuing discrimination took place is 5/30/2012.

 The allegations are:


SEE ATTACHED COMPLAINT FORM



# New York State Division of Human Rights
## Complaint Form

RECEIVED

JUN 0 6 2012

HEMPSTEAD REGIONAL OFFICE

## *CONTACT INFORMATION*

My contact information:

Name: Janet Kronemberg

Address: 1416 Ackerson Blvd   Apt or Floor #:

City: Bay Shore   State: NY   Zip: 11706

## *REGULATED AREAS*

I believe I was discriminated against in the area of:

☑ Employment ☐ Education ☐ Volunteer firefighting

☐ Apprentice Training ☐ Boycotting/Blacklisting ☐ Credit

☐ Public Accommodations
*(Restaurants, stores, hotels, movie theaters amusement parks, etc.)*

☐ Housing

☐ Commercial Space

☐ Labor Union, Employment Agencies

I am filing a complaint against:

Company or Other Name: Winthrop University Hospital

Address: 259 1st Street

City: Mineola   State: NY   Zip: 11501

Telephone Number: (031) 663 3000
(area code)

Individual people who discriminated against me:

Name: Patrice Villa   Name:

Title: Manager
(Ultrasound)   Title:

## *DATE OF DISCRIMINATION*

The most recent act of discrimination happened on: 05 / 30 / 2012
month   day   year

3

## BASIS OF DISCRIMINATION
*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)* <br> Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)* <br> Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)* <br> Please specify: | ☐ **Marital Status** <br> Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)* <br> Please specify: | ☐ **Military Status:** <br> Please specify: |
| ☐ **Creed / Religion** <br> Please specify: | ☐ **National Origin** <br> Please specify: |
| ☐ **Disability** <br> Please specify: | ☑ **Race/Color or Ethnicity** <br> Please specify: *I am Black African American* |
| ☐ **Domestic Violence Victim Status:** <br> *(Employment only)* <br> Please specify: | ☑ **Sex** <br> Please specify: ☐ Female ☐ Male <br> ☐ Pregnancy <br> ☐ Sexual Harassment |
| ☐ **Familial Status** *(Housing and Credit only)* <br> Please specify: | ☐ **Sexual Orientation** <br> Please specify: |
| ☑ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)* <br> Please specify: *REPORTED DISCRIMINATION TO HUMAN RESOURCES* | |

 Before you turn to the next page, please check this list to make sure that you provided information *only* for the type of discrimination that relates to your complaint.

# EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**
a) 1-3      b) 4-14      c) 15 or more      d) 20 or more      e) Don't know ⟨circled⟩

**Are you currently working for the company?**

☑ **Yes**

Date of hire: ( _06_    _03_    _2016_ )
                Month    day    year

What is your job title? _Register Vascular Specialist_

☐ **No**

Last day of work: ( _____    _____    _____ )
                    Month    day    year

What was your job title? _Vascular Tech_

☐ **I was not hired by the company**

Date of application: ( _____    _____    _____ )
                       Month    day    year

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☐ Sexually harassed me

☑ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☑ Denied me a promotion or pay raise

☑ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☑ Gave me a disciplinary notice or negative performance evaluation

☐ Other: _____

6

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.*
**PLEASE TYPE OR PRINT CLEARLY.**

AS THE OLDEST AND ONLY AFRICAN AMERICAN IN THE VASCULAR LAB AT WINTHROP UNIVERSITY HOSPITAL I FEEL THAT I HAVE AND CONTINUE TO BE DISCRIMINATED AGAINST ON THE BASIS OF MY RACE/COLOR WHICH IS BLACK, MY GENDER WHICH IS FEMALE AND ON THE BASIS OF RETALIATION BY THE DEPT. MANAGER PATRICE VILLA (WHO IS A WHITE/FEMALE) AND TIMOTHY BUCKS (ASSIST. ADMINISTRATOR / WHITE/MALE).

MY DEPT. MANAGER REFUSED MY REQUEST FOR A LEAVE FOR DEC. 25, 2011 DESPITE ALLOWING OTHER PERSONNEL WITH LESS SENIORITY THE OPPORTUNITY TO TAKE TIME-OFF; MY DEPT. MANAGER ALTERED MY PERFORMANCE EVALUATION WHICH I RECEIVED DURING 2011, AND ALSO FAILED TO PROVIDE ME WITH COPIES OF ~~EITHER~~ EITHER EVALUATION. MY DEPT. MANAGER ALSO IGNORED MY SENIORITY BY MAKING REQUESTS ~~OF~~ FROM OTHER PERSONNEL FOR WHICH I WAS RESPONSIBLE AND ENROLLED ME IN STAFF DEVELOPMENT TRAINING ON THE BASIS OF MY HAVING COMMITTED ERRORS IN THE PERFORMANCE OF MY DUTIES, WHICH I WAS UNAWARE, WHEREAS MY SIMILARLY SITUATED CO-WORKERS HAVE NOT BEEN REQUIRED TO UNDERTAKE SUCH CLASSES; I AM ALSO REQUIRED TO RENEW MY REGISTRY UNDER A COMPANY DIFFERENT FROM THAT OF MY COLLEAGUES; FAILED TO RECEIVE MY RAISE DESPITE HAVING RECEIVED MY REGISTRY, AND HAD GONE TO HUMAN RESOURCES IN MARCH 2012 AND ~~SEPTEMBER~~ NOVEMBER 2011 TO COMPLAIN WITHOUT RECEIVING AN INFORMATIVE RESPONSE.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

Sign your full legal name

MICHAEL D. JACKSON
Notary Public, State of New York
No. 01JA6198718
Qualified in Queens County
Commission Expires Jan. 5, 2013

Subscribed and sworn before me
This 5TH day of June 2012

Signature of Notary Public

County: Queens     Commission expires: 1/5/2013

**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

9

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 | PERSON FILING CHARGE:<br>Janet Kronemberg<br>THIS PERSON (Check one):<br>  Claims to be aggrieved [x]<br>  Files on behalf of other(s) [ ] |
| TO:<br>Winthrop University Hospital<br>Attn: President/CEO<br>259 First St.<br>Mineola, NY 11501 | DATE OF ALLEGED VIOLATION:<br>  5/30/2012<br>PLACE OF ALLEGED VIOLATION:<br>  Nassau County<br>EEOC CHARGE NUMBER:<br>  16GB203295<br>FEPA CHARGE NUMBER:<br>  10155470 |

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY PROCESS

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

      [X]  Title VII of the Civil Rights Act of 1964
      [ ]  The Age Discrimination in Employment Act of 1967 (ADEA)
      [ ]  The Americans with Disabilities Act (ADA)

HAS BEEN RECEIVED BY: The New York State Division of Human Rights (FEP Agency) and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon expiration of any deferral requirements if this I a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the FEP Agency's final findings and orders.  These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the FEP Agency.  All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders.  In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the FEP Agency and the Commission.  This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final decision and order of the above named FEP Agency.  For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's issuing a final finding and order.  If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]  An Equal Pay Act investigation (29 U.S.C. §206(d)) will be conducted by the
     Commission concurrently with the FEP Agency's investigation of the charge.

[X]  Enclosure: Copy of the Charge

BASIS FOR DISCRIMINATION:  Race/Color, Sex, Opposed Discrimination/Retaliation

CIRCUMSTANCES OF ALLEGED VIOLATION:
     SEE ATTACHED N.Y.S. DIVISION OF HUMAN RIGHTS COMPLAINT

DATE: June 8, 2012

                          TYPED NAME OF AUTHORIZED EEOC OFFICIAL:
                          Kevin J. Berry

Exhibit C



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>JANET KRONEMBERG,<br><span style="padding-left:8em">Complainant,</span><br><br><span style="padding-left:4em">v.</span><br><br>WINTHROP UNIVERSITY HOSPITAL,<br><span style="padding-left:10em">Respondent.</span> | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10155470 |

Federal Charge No. 16GB203295

On 6/6/2012, Janet Kronemberg filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of race/color, sex, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The investigation does not support the complainant's allegations that she was discriminated against on the basis of her race/color, sex, or opposition to discrimination/retaliation when she was disciplined, negatively evaluated, denied a raise, denied time off requests and placed on a Performance Improvement Plan. The respondent provided a legitimate non-discriminatory reason for the actions they took. Specifically, the complainant had performance issues related to the aftermath of a merger between the Vascular lab and the Radiology Department.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and

Petition within sixty (60) days after service of this Determination.  A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458.  DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964.  Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC).  You have the right to request a review by EEOC of this action.  To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112.  Otherwise, EEOC will generally adopt our action in your case.

Dated:       December 6, 2012
             Hauppauge, New York

                              STATE DIVISION OF HUMAN RIGHTS


         By:     _____
                 Ronald B. Brinn
                 Regional Director

# Exhibit D



**ANDREW M. CUOMO**
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

JANET KRONEMBERG,

　　　　　　　　　　Complainant,

　　　　v.

WINTHROP UNIVERSITY HOSPITAL,

　　　　　　　　　　Respondent.

---

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10168286**

---

I, Janet Kronemberg, residing at 1416 Ackerson Blvd, Bay Shore, NY, 11706, charge the above named respondent, whose address is Human Resources Dept.,259 First St., Mineola, NY, 11501 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of opposed discrimination/retaliation.

Date most recent or continuing discrimination took place is 3/11/2014.

The allegations are:

**SEE ATTACHED**

RECEIVED

HAUPPAUGE REGIONAL OFFICE

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE DIVISION OF HUMAN RIGHTS AND EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION

State Division of Human Rights on the Complaint of

**JANET KRONEMBERG,**

Complainant,

-against-

**WINTHROP UNIVERSITY HOSPITAL,**
**PATRICE VILLA**, in her official and individual capacity,
and **ENRICO PEREZ**, in his official and individual
capacity

Respondents.

**CHARGE OF**
**DISCRIMINATION**

NYSDHR NO.:

EEOC NO.:

1.      I, JANET KRONEMBERG, residing at 1416 Ackerson Boulevard, Bay Shore, New

York 11706, charge the above-named Respondents, WINTHROP UNIVERSITY HOSPITAL,

PATRICE VILLA, and ENRICO PEREZ whose business address is 259 1st Street, Mineola, New

York 11501 with unlawful discriminatory employment practices in violation of Article 15 of the

Executive Law of New York (Human Rights Law) §§ 290 and 296, based on retaliation and

opposing discriminatory practices.

2.      I filed a complaint of discrimination based on race/color, sex, and opposing

discriminatory practices against Respondents on or about June 6, 2012.

3.      Ever since my complaint was filed, I have been retaliated against for exercising my

right to oppose discriminatory practices including but not limited to negative evaluations leading to

my termination on March 11, 2014.

4.      I was hired by WINTHROP UNIVERSITY HOSPITAL (hereinafter "WINTHROP")

in or around June 1996 as a Vascular Technologist

5.      I had been employed as a Registered Vascular Technologist at WINTHROP for nearly eighteen (18) years.

6.      I had not started to experience discriminatory treatment however until PATRICE VILLA (hereinafter "VILLA") became my supervisor in or about February 2011.

7.      Prior to Ms. VILLA becoming my supervisor, I had always maintained a stellar employment record including positive reviews and evaluations.

8.      When Ms. VILLA, a Caucasian woman became my supervisor however, I felt discriminated against namely because of my race/color and age.

9.      Although I complained to WINTHROP about this treatment, no action was taken, forcing me to file a Complaint with the New York State Division of Human Rights on or about June 6, 2012.

10.     Since June 6, 2012, Ms. VILLA has created a hostile work environment for me and has continued to retaliate against me such as by continuously writing me up for minor infractions in an effort to terminate my employment.

11.     In 2011, all employees in my department were told that we had one year to take the registry exam to obtain either the Registered Vascular Technologists (RVT) or Registered Vascular Specialist (RVS) credentials.

12.     This was to be done no later than March 1, 2013.

13.     It was not specified through which institution the credentials had to be acquired. As such, I took the exam and acquired my credentials through Cardiovascular Credentialing International (CCI) in July 2012.

-2-

14.    In February 2013, I was told by Ms. VILLA that I had to re-take the exam and obtain my credentials through the American Registry of Diagnostic Medical Sonographers (ARDMS).

15.    I was the only individual who was being forced to take this exam a second time. As such, I refused and told Ms. VILLA that I had already taken the exam and that I was qualified and certified.  Both CCI and ARDMS offered the same credentialing.

16.    Nevertheless, I was suspended between March 1, 2013 and March 31, 2013 for failing to take the exam a second time. In order to be reinstated, I finally agreed to take the exam again. I passed said exam and was reinstated.

17.    Thereafter, Ms. VILLA continuously wrote me up for minor infractions, such as computer input errors. Although everyone had minor infractions, I was the only one that was being written up.

18.    In February 2014, I received yet another negative and disparaging evaluation from Ms. VILLA insinuating that I was not qualified and inadequately performed my job duties.

19.    I took exception to this evaluation and refused to sign same.

20.    On February 11, 2014, I was advised by Ms. VILLA that I was being suspended without pay for refusal to sign my evaluation. Ms. VILLA then took my badge.

21.    This is a clear breach of WINTHROP'S obligations.

22.    Ironically, the year prior to filing a Complaint of Discrimination with the New York State Division of Human Rights, I refused to sign a similar evaluation authored by Ms. VILLA for the same reason. I was never reprimanded for same.

23.    I received no written correspondence as to my suspension and no further explanation.

24.    On or about February 13, 2014 however, I received a telephone call from Ms.

-3-

Roseanne Caldon in the Human Resources Department advising me to return to work on Friday, February 14, 2014.

25.     When I returned however, ready to perform my duties, I learned that what I had been told by Ms. Caldon was not accurate.

26.     Mr. ENRICO PEREZ (hereinafter "Perez") advised me that I would not be returning to work and that I was being required to write a list of what I think about the Vascular Lab and the things that are happening in the Lab.

27.     This was particularly troubling since I had not received a copy of the evaluation until that day, February 14, 2014.

28.     I advised Mr. Perez that I would be seeking advice from my counsel with regard to this list.

29.     In addition, I also requested that I receive something in writing with respect to my suspension and the reasoning for same.

30.     I have never received such correspondence.

31.     I did not receive any information from WINTHROP thereafter with regard to my suspension. All of my calls and inquiries went unanswered.

32.     Finally, on March 11, 2014, I received a telephone call from Ms. VILLA to inform me that I had been terminated from my position at WINTRHOP without any further explanation.

33.     On or about March 17, 2014, I received a letter authored by Ms. VILLA stating that I was terminated from my position.

34.     Due to the WINTHROP'S discriminatory behavior I have suffered in many ways including but not limited to emotionally and financially. While employed at the Hospital I received

-4-

a salary of $79,000.00 in addition to medical benefits for myself and my family..

BASED ON THE FOREGOING, I charge the above-named Respondents with unlawful discrimination and retaliation based on my opposing discriminatory practices in violation of my civil rights. I request that this Charge of Discrimination be cross filed with the Equal Employment Opportunity Commission.

Dated: April 11, 2014.
Hempstead, New York

JANET KRONEMBERG

-5-



# WINTHROP
## University Hospital

### Your Health Means Everything.

March 11, 2014

Janet Kronemberg
P.O. Box 1248
Bayshore, NY 11706

Ms. Kronemberg:

This letter serves as documentation that your employment with Winthrop University Hospital has been terminated effective immediately.

If you participated in the Hospital's Health and Welfare Benefits, you will be notified of your COBRA rights in a separate letter.

If you have any questions, please do not hesitate to call Roseann Caldon, Manager of Employee Relations at 663-3730.

Security gathered your personal belongings from your closet and is holding them in the security office. Security can be contacted at extension 2520 to schedule a pick up time.

Sincerely,

Patrice Villa
Ultrasound Clinical Manager

## VERIFICATION

STATE OF NEW YORK    )
                           )     ss.:
COUNTY OF NASSAU    )

      JANET KRONEMBERG  being duly sworn, depose and says: that he is the  complainant herein; that he has read the foregoing complaint and knows the content thereof; that the same is true of his own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he believes the same to be true

                                            JANET KRONEMBERG

Severally Subscribed and sworn to before me
this 11th  day of April 2014

_____
NOTARY PUBLIC

YOLANDA BRYANT-WELCOME
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BR6178297
Qualified in Nassau County
My Commission Expires November 26, 20__

-6-

Exhibit E

## PUTNEY, TWOMBLY, HALL & HIRSON LLP

DANIEL F. MURPHY, JR.
MICHAEL T. McGRATH
THOMAS A. MARTIN
WILLIAM M. POLLAK
JAMES E. McGRATH, III
CHRISTOPHER M. HOULIHAN
THOMAS M. LAMBERTI
STEPHEN J. MACRI
HARVEY I. SCHNEIDER
MARY ELLEN DONNELLY
JOSEPH B. CARTAFALSA
GEOFFREY H. WARD
ANDREA HYDE
E. PARKER NEAVE
MARK A. HERNANDEZ
JAMES M. STRAUSS
PHILIP H. KALBAN
JEROME P. COLEMAN
BARBARA M. MAISTO
CARYN B. KEPPLER

ESTABLISHED 1866
COUNSELORS AT LAW
521 FIFTH AVENUE
NEW YORK, NEW YORK 10175
(212) 682-0020
TELEFAX: (212) 682-9380
PUTNEYLAW.COM

740 BROAD STREET, SUITE 2
SHREWSBURY, NEW JERSEY 07702
(732) 379-6020
TELEFAX (732) 345-9444

1205 FRANKLIN AVENUE
GARDEN CITY, NY 11530
(516) 746-0070
TELEFAX: (516) 746-0599

2000 GLADES ROAD
SUITE 300
BOCA RATON, FLORIDA 33431
(800) 935-8480
TELEFAX: (561) 613-4100

COUNSEL
CHARLES J. GROPPE
ALEXANDER NEAVE

July 31, 2015

**Via ECF**
Hon. Leonard D. Wexler
Senior United States District Judge
United States District Court
Eastern District of New York
944 Federal Plaza
Central Islip, New York 11722

Re:     **Janet Kronemberg v. Winthrop University Hospital** *et al.*
        **E.D.N.Y. 15-CV-03235 (LDW)(AYS)**

Dear Judge Wexler:

        This firm represents defendants, Winthrop University Hospital (the "Hospital"), Patrice
Villa, and Enrico Perez (collectively "Defendants"), in the above-referenced action.  In
accordance with Your Honor's Individual Practice Rules, we write to request a pre-motion
conference to obtain permission to file a motion pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure to dismiss Plaintiff's Complaint in its entirety.

        Plaintiff's Complaint alleges that Defendants discriminated and retaliated against her on
the basis of race and color by terminating her employment in violation of Title VII of the Civil
Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 ("Section 1981")
the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 and the Nassau
County Human Rights Law ("NCHRL"), Title C-2, Section 21-9.8. All of Plaintiff's claims must
fail as a matter of law.

**Plaintiff's Title VII Discrimination Claims Are Time-Barred**

        Plaintiff's Title VII discrimination claims are untimely.  It is well settled that claims
under Title VII must be timely raised in an administrative complaint before a district court may
review such claims. Hussey v. New York State Dep't of Law/Office of Atty. Gen., 933 F. Supp.
2d 399, 411 (E.D.N.Y. 2013). Any claim arising under Title VII must be filed within 300 days
after the occurrence giving rise to the claim where, as here, the claim was also brought before a
state agency. 42 U.S.C. § 2000e–5(e).  Plaintiff's administrative complaint only contains a claim

Hon. Leonard D. Wexler
July 31, 2015
Page 2

of retaliation and is devoid of any claims or allegations of discrimination.  Since Plaintiff failed to raise any claims of discrimination in the administrative complaint, Plaintiff has failed to exhaust her administrative remedies with respect to these claims and such claims must be dismissed.  See Hussey, 933 F. Supp. 2d at 411.

**The Complaint Does Not Contain Cognizable Claims of Discrimination**

Plaintiff has also failed to plead any cognizable claim of discrimination.  Plaintiff does not allege facts sufficient to show that she was treated differently because of her protected classes or that Defendants acted with discriminatory intent.  Therefore, Plaintiff's claims of discrimination must be dismissed.

To allege an actionable *prima facie* case of discrimination, a plaintiff must assert that: (1) she was a member of a protected class, (2) she was qualified for his position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination based on her membership in the protected class.  Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 316-18, n. 2 (2d Cir.1999); Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 217 (S.D.N.Y. 2010).  Additionally, under Section 1981, a plaintiff must plead sufficient facts to show that the defendant(s) acted with discriminatory intent.  Vega v. Hempstead Union Free Sch. Dist., 2014 WL 2157536 (E.D.N.Y. May 22, 2014); Anderson v. State of N.Y. Office of Ct. Admin. of Unified Ct. Sys., 614 F.Supp.2d 404, 426 (S.D.N.Y. 2009).  Moreover, a plaintiff is required to set forth factual circumstances from which discriminatory motivation for an adverse employment action can be inferred.  Id.  Plaintiff has failed to plead sufficient facts in the Complaint to demonstrate that the Hospital treated her differently than similarly situated members of the unprotected class because of her protected class and that Defendants acted with discriminatory intent.  Accordingly, Plaintiff's discrimination claims are insufficient as a matter of law.

**The Complaint Does Not Contain Cognizable Retaliation Claims**

Plaintiff has also failed to plead cognizable retaliation claims.  Plaintiff has not and cannot allege sufficient facts to establish a causal connection between any allegedly protected activity and the termination of her employment.  To sustain an action for retaliation, Plaintiff must allege facts that plausibly suggest: "(1) that she participated in protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action."  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); see also Smith v. Reg'l Plan Ass'n, Inc., 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011) (applying Title VII retaliation standards to Section 1981 retaliation claims).  A plaintiff cannot establish an inference of causation if the protected activity is too remote in time from the allegedly retaliatory adverse action.  Yarde v. Good Samaritan Hosp., 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005).  In the Second Circuit, courts have consistently held that periods of time of longer than two months do not establish a causal connection indicative of retaliation.  See, e.g., Stoddard v. Eastman Kodak Co., 2009 WL 367553, *3 (2d Cir. Feb. 13, 2009); Ruhling v. Tribune Co., 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007).  Plaintiff's employment with the Hospital was terminated on March 11, 2014, nearly two years after Plaintiff filed her initial administrative complaint on June 6, 2012.

Hon. Leonard D. Wexler
July 31, 2015
Page 3

Accordingly, Plaintiff's protected activity is too remote in time from the termination of her
employment to establish a causal connection indicative of retaliation.  See Id.  Plaintiff's
retaliation claims are insufficient as a matter of law and must be dismissed.

### The Court Lacks Jurisdiction Over Plaintiff's NCHRL Claims

Plaintiff's Third Cause of Action asserts that Defendants discriminated and retaliated
against Plaintiff on the basis of her race and color in violation of Nassau County Human Rights
Law.  Again, Plaintiff's Complaint is devoid of any factual allegations to support this claim and
on that basis alone is subject to dismissal. Additionally, the NCHRL does not provide individuals
with a private right of action. Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 2007 WL
1288137, at *4 (E.D.N.Y. Apr. 30, 2007); Sgroia v. North Shore-Long Island Jewish Health
System, Inc., 2010 WL 4530243, 2010 N.Y. Slip Op. 33117(U) (Sup. Ct. Nassau Cty. Oct 29,
2010).  Since there is no private cause of action under the Nassau County Human Rights Law,
the Court lacks jurisdiction over Plaintiff's NCHRL claims.  Accordingly, Plaintiff's NCHRL
claims must be dismissed as a matter of law.  See Id.

For the reasons set forth herein, the Defendants respectfully requested that Your Honor
grant the Defendants' request for a pre-motion conference and that the Defendants be permitted
to move to dismiss the Complaint in its entirety.

Respectfully submitted,

/s/ MED

Mary Ellen Donnelly

cc:    Frederick K. Brewington, Esq.

Exhibit F

THE LAW OFFICES OF
# FREDERICK K. BREWINGTON

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 • www.brewingtonlaw.com

Frederick K. Brewington
Ira Fogelgaren
Gregory Calliste, Jr.

August 7, 2015

*VIA ELECTRONIC CASE FILING*
Honorable Leonard D. Wexler
United States District Court Judge
United States District Court
Eastern District of New York
Long Island Federal Courthouse
100 Federal Plaza
Central Islip, New York 11722

> Re:   *Kronemberg v. Winthrop University Hospital, et.al.*
>        Docket No.: CV-15-3235 (LDW)(AYS)

Dear Judge Wexler:

   As your records will reflect, we are the attorneys representing the Plaintiff in the above referenced matter. This letter is respectfully submitted in opposition to Defendants' pre-motion conference letter, dated July 31, 2015, wherein Defendants seek to submit a motion to dismiss Plaintiff's claims. For the reasons set both below, Defendants' motion should be denied.

   Defendants claim that Plaintiff's Complaint fails to state a claims under Title VII, Sections 1981 the NYS Human Rights Law and the Nassau County Human Rights Law (NCHRL) should be dismissed. Plaintiff disagrees. Indeed, Plaintiff's Complaint goes well above the minimal pleading requirements under *FRCP* Rule 8 and is sufficiently plead to withstand Defendants' 12(b) Motion - as a matter of law. In the above regard, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678, *citing Twombly*, 550 U.S. at 556. The Supreme Court has since reiterated that the pleading of specific facts in support of a complaint is unnecessary, and has instead opined that a complaint need only give a defendant "fair notice" of the claim, and identify "the grounds upon which it rests." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). Plaintiff need only present pleadings that give fair notice of the claims against the Defendants, and the grounds they rest upon. *Erikson*, 551 U.S. at 93. Plaintiff has surpassed this standard.

Honorable Leonard D. Wexler
August 7, 2015
Page 2

The Courts apply the same legal elements and burden-shifting analysis for a Title VII race discrimination claim as they do for a [race-based] employment discrimination claim under *42 U.S.C.* §§ 1981, NCHRL and the NYSHRL. *See Baker v. McDonalds Corp.*, 686 F. Supp. 1474, 1481 (S.D. Fla. 1987) (proof sufficient to sustain a Title VII race claim will suffice to sustain a claim under § 1983, and vice-versa). *See also Roge v. NYP Holdings, Inc.*, 257 F. 3d 164, 168 (2d Cir. 2001) (holding akin to <u>Baker</u>); *Quinn v. Green Tree Credit Corp.*, 159 F. 3d 759, 765 (2d Cir. 1998); See also, *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir.2000) (courts in this Circuit analyze discrimination claims brought under Title VII, the New York Human Rights Law in the same manner). Since Defendants' fail to specifically disclose what is lacking in Plaintiff's complaint it is difficult to fully respond.

Under the continuing violation doctrine "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period" ( *Cornwell v. Robinson*, 23 F3d 694, 704 [2d Cir1994] ). A continuing violation exists "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice" ( id.). Additionally the fact that Plaintiff clearly alleges a hostile work environment makes Defendants arguments baseless, i.e.,"hostile environment claims are different from other discrimination claims, in that they are based not on discrete acts, but the cumulative effect of many individual acts." *Linder v. City of New York*, 263 F.Supp.2d 585, 594 (E.D.N.Y.2003). "a series of separate acts that collectively constitute one 'unlawful employment practice' " (*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106). Here plaintiff has alleged a continuing violation based on the allegations of the Complaint and any motion would be futile.

In a race discrimination claim, such circumstantial evidence can include a history or pattern of adverse treatment of members in the same protected class/race as Plaintiff, or differential treatment of a protected class member, when compared to a non-protected, similarly-situated employee. Id. at 1084; *Gallagher v. Delaney*, 139 F.3d 338, 350 (2d Cir.1998) Applying the above case law to the evidence at hand, the Plaintiff can clearly sustain his claims of race-based discrimination and retaliation by the defendants under Title VII, *42 USC* §§1981 and 1983. Contrary to Defendants' claims the Plaintiff sets out that the Defendants, including the hospital treated her differently that similarly situated non-African American people. Specifically at paragraphs 63,64,88,95 and 96 are illustrations of how Defendants' claims are not supported in the face of the well pleaded Complaint.

However, addressing the fourth element of a Title VII or § 1981 racial discrimination or Title VII retaliation claim, the courts have repeatedly recognized circumstantial evidence, to support an inference that race or engaging in 'protected activity' [i.e., opposing discrimination] were the motivating factors behind an adverse employment action. *See, Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir.1999); *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999); *Feacher v Intercontinental Hotels Group*, 563 F Supp 2d 389, 400 [NDNY 2008]. Defendants remained on notice from the time Plaintiff complained to Defendants about this treatment, no action

Honorable Leonard D. Wexler
August 7, 2015
Page 3

was taken by Defendant Perez or Winthrop, forcing PLAINTIFF to file a Complaint with the New York State Division of Human Rights on or about June 6, 2012, State Division of Human Rights Case No.: 10155470. From that time Defendants were keenly aware through the filing of the instant complaint, as Plaintiffs complaints listed in Paragraph 7 states "Prior hereto, on April 15, 2014 , Plaintiff filed a Charge of Discrimination 10168286 against Defendant WINTHROP UNIVERSITY HOSPITAL with the New York State Division of Human Rights (hereinafter "NYSDHR") alleging her wrongful termination due to the Defendants' racial animus.  Plaintiff also cross filed a charge with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16G-2015-01163."  In addition, the claim of remoteness fails to recognize that the improper and ongoing retaliatory treatment was unbroken as set out in the Complaint:

      51.  Subsequent to her filing of the original complaint of discrimination in June 2012, MS. KRONEMBERG has been retaliated against with a barrage of items, including, but not limited to:

- daily verbal abuse, and false accusations that were regular and aimed at disrupting PLAINTIFF'S employment.
- rejecting PLAINTIFF's certification.
- suspending PLAINTIFF even though she was certified.
- requiring PLAINTIFF to get certified twice.
- depriving PLAINTIFF of access to her job and pay.
- issuing continuous false write ups and poor evaluations, despite satisfactory patient care.
- creating special and different rules to apply to PLAINTIFF.
- requiring PLAINTIFF to complete the PIP program despite MS. KRONEMBERG's successful twenty-five (25) year record as an RVT, and successful eighteen (18) year tenure at Defendant HOSPITAL.
- misleading PLAINTIFF about her work status

      52.    The  wave  of  warnings,  re-evaluations,  and  *Performance Improvement Plans*  were  a  pattern  of  false  over  documentation  against PLAINTIFF to manufacture, and create a false record of PLAINTIFF'S abilities, and performance.  (Paragraphs 51 and 52 of the Complaint)

Defendants' claims are likewise defeated there are hostile work environment allegations. As to Plaintiff's claims under the Nassau County Human Rights Law, same are respectfully withdrawn.

    Defendants should be denied the opportunity to make this baseless motion.

                 Respectfully submitted

                 FREDERICK K. BREWINGTON

# Exhibit G

# WINTHROP-UNIVERSITY HOSPITAL
## EMPLOYEE JOB DESCRIPTION AND

| | |
|---|---|
| Job Title: | Ultrasound Technologist |
| Name: | Janet Kronemberg |
| Date of Hire: | 06/03/1996 |
| ID Number: | 13053 |

## INSTRUCTIONS

1. Create Report on Performance and Competencies each year.
2. Develop/update performance standards based on job description, goals, projects, etc.
3. Develop update competencies (including cultural competencies) based on job description.
4. Complete *Report* throughout the calendar year as standards/competencies are observed/evaluated.
5. Report should be reviewed with employee between November-February time period.
6. Following review, send original to Human Resources. Maintain copy of *Report* in employee department file.

## CREDENTIAL VERIFICATION

1. *License Type: RVS     License #: 00081464     Exp. Date: 06/30/2012
2. *Certification(s):
     Type:      Exp. Date:
     Type:      Exp. Date:
     Type:      Exp. Date:
     *(Attach copies of new or renewed license, registration or certification)*

## PERFORMANCE PLAN INITIATED

☐ Yes     ☒ No

**Re-evaluation Review Date:**

## EMPLOYEE COMMENTS

This Report on Performance and Competency has been reviewed with me. I have the following comments:

_____

_____

## SIGNATURES

DATE: 03/01/12

(Employee Signature)

DATE: 3/1/12

(Evaluator Signature)

Patrice Vila   Ultrasound Manager
(Print Name)/Title



**JOB DESCRIPTION**

**TITLE:** Ultrasound Technologist
**DEPARTMENT:** Ultrasound/Radiology

**A.  Summary:** The Ultrasound Technologist, under the direction of a Radiologist, operates Ultrasound equipment to produce clinical diagnostic images and performs procedures according to established standards and practices without constant supervision of technical detail.

**B.  Reports to:** Ultrasound Supervisor

**C.  Qualifications:**

1.   Education: Minimum of 2 years education in an accredited Ultrasound Program

2.  License/Certification: Must be a Registered Diagnostic Medical Sonographer. Registry eligible will be considered with documentation meeting the American Registry of Diagnostic Medical Sonographers requirements.

3.  Years Experience: 3-5 Years Experience in Vascular, GYN and General Ultrasound preferred.

4.   Skills: Advanced computer skills are required. A full working knowledge of the Ultrasound scanners is required.

5.   Excellent communication skills both written and oral.

6.   The position requires pushing, pulling, bending, lifting and the ability to stand for long periods of time.

| Validation Code | | Rating Scale |
|---|---|---|
| 1. Observation     5. Press Ganey<br>2. Chart/Record/File Review     6. Articulation<br>3. Demonstration<br>4. Test | | 1. Meets Standard/Competency<br>2. Does not meet Standard/Competency |

| Performance Standards | Criteria | Validation Code | Rating Scale | Comments |
|---|---|---|---|---|
| PS1 – Operates Ultrasound equipment to take diagnostic images of specific body areas/parts as ordered | • Produces diagnostic images for interpretation by the radiologist<br>• Demonstrates a thorough knowledge of Ultrasound equipment. | 1,3 | 1 | |
| PS2 – Prepares patient using proper positioning and/or immobilizing patients and giving them the proper instructions regarding the procedure. | • Quality review of the technologists images fall within the guidelines of departmental SOP.<br>• Technologist is observed to give clear and concise instruction to the patient before beginning an exam. | 1,3 | 1 | |
| PS3 – Accurately utilizes the PACS system to make images available to the radiologist for interpretation. | • Technologist creates a minimum number of exceptions. | 1,3 | 1 | |
| PS4 – Accurately utilizes the Radiology Information System | • Enters proper exam coding.<br>• Arrives and completes exams in a timely fashion. | 1,3 | 1 | |
| PS5 – Assists in the care and maintenance of facilities, equipment and supplies | • Reports any equipment problems or malfunctions to the supervisor in a timely fashion. | 1,3 | 1 | |
| PS6 – Instructs and supervises ultrasound students in clinical practicum. | • Works with the ultrasound student to perform exams as well as performing individual image evaluation. | 1,3 | 1 | Janet is always very eager to work with the students. |

| Validation Code | Rating Scale |
|---|---|
| 1. Observation        5. Press Ganey<br>2. Chart/Record/File Review   6. Articulation<br>3. Demonstration<br>4. Test | 1. Meets Standard/Competency<br>2. Does not meet Standard/Competency |

| B.   Value Standards | Validation Code | Rating Scale | Comments |
|---|---|---|---|
| • **VS1-*Performance***: Performs each task at the expected level of service, technical, quality and/or clinical competence.  Abides by all WUH policies / procedures and regulatory agency guidelines. | 1,3 | 1 | Janet is a dedicated sonographer and very focused on her patient care.<br>Janet has struggled this year to follow new policies and a few that she may have not been aware of until this year. |
| • **VS2-*Respect***: Demonstrates respect for the patient, families, WUH, colleagues and all external partners. | 1,3 | 1 | Janet demonstrates respect for her patients.<br>On several occasions this past year Janet was noted to be confrontasional with her colleagues. |
| • **VS3-*Integrity***: Demonstrates high ethical standards.  Is honest, reliable and sincere relative to job. | 1,3 | 1 | |
| • **VS4-*Dedication***: Demonstrates a commitment to quality and customer service. | 1,3 | 1 | |
| • **VS5-*Empathy***: Demonstrates ability to understand/recognize a situation from the standpoint of the customer, patient, or internal/external business partner, and takes an active interest in assisting with their concern. | 1,3 | 1 | Janet takes time to converse with her patients helping them to be comfortable and often less anxious. |

| Validation Code | | Rating Scale | |
|---|---|---|---|
| 1. Observation      5. Press Ganey<br>2. Chart/Record/File Review   6. Articulation<br>3. Demonstration<br>4. Test | | 1. Meets Standard/Competency<br>2. Does not meet Standard/Competency | |

| C. Core Standards | Validation Code | Rating Scale | Comments |
|---|---|---|---|
| • CS1- *Availability*: Maintains at a Department acceptable level. | 1,3 | 1 | |
| • CS2- *Annual Requirements:* Shows personal responsibility for completing Annual Health assessment, TB testing, and all other annual requirements. | 1,3 | 1 | |
| • CS3- *Patient Safety*- Supports and promotes a culture of patient safety; actively participates in hospital patient safety initiatives. Demonstrates knowledge of patient safety relative to job description. | 1,3 | 1 | |
| • CS4- *Job Safety*: Follows safety procedures; recognizes unsafe acts or conditions; reports safety issues to supervisor immediately. | 1,3 | 1 | |
| • CS5- *Customer Service*: Makes service excellence and quality excellence a top priority. Demonstrates the Must-Haves: Welcome People, Use Key Words at Key Times, Help in any way You Can. Demonstrates Standards of Performance as they apply to the job. | 1,3 | 1 | |
| • CS6-*Cultural*: Shows ability to understand and respect the concerns of individuals with backgrounds different from their own. | 1,3 | 1 | |
| • CS7: *HIPAA/ Confidentiality / Security / Corporate Compliance:* Understands and respects the confidentiality and security of employee and patient information. Understands and adheres to the Hospital's Code of Conduct. | 1,3 | 1 | |
| • CS8- *Accountability*- Demonstrates responsibility for own job practice. Maintains competencies required for designated job. Willingly assumes other duties and tasks as assigned. Adheres to departmental dress code including wearing Hospital ID. | 1,3 | 1 | Janet has made a strong effort when asked to begin writing up exam reports. She is making efforts to familiarize herself with the computer systems. |

| Validation Code | Rating Scale |
|---|---|
| 1. Observation      5. Press Ganey<br>2. Chart/Record/File Review      6. Articulation<br>3. Demonstration<br>4. Test | 1. Meets Standard/Competency<br>2. Does not meet Standard/Competency |

| Age Specific Population Served Competency | | | Criteria | Validation Code | Rating Scale | Comments |
|---|---|---|---|---|---|---|
| ☐ Neonates | ☐ Infants | ☒ Pediatrics | | | | |
| ☒ Adolescents | ☒ Adults | ☒ Geriatrics | | 1,3 | 1 | |
| • PSC1-<br>**Demonstrates ability to identify physiologic, psychosocial and safety needs of the patient population served, relative to job.** | | | • Consistently provides care based on age specific criteria. | | | |

| Validation Code | | Rating Scale |
|---|---|---|
| 1. Observation          5. Press Ganey | | 1. Meets Standard/Competency |
| 2. Chart/Record/File Review     6. Articulation | | 2. Does not meet Standard/Competency |
| 3. Demonstration | | |
| 4. Test | | |

| Standard/Competency | Recommendations | Review Date |
|---|---|---|

**Annual Goals and Recommendations**

Review updated job requirements for 2012.

Make sure all annual requirements are completed by May 2012 through GEOlearning.

They are: Annual Health Assessment, Update, Infection Control, N95 Resp Fit & Bariatric Sensitivity.

Take time to communicate with others acquiring and providing detail information.

Information such as names, exam type etc...

The registered vascular diagnostic medical sonographer job description for 2012 was provided.

Recommend the following GEOLEARNING courses: Email Etiquette, Patient Identification,

Continuing education related to ultrasound is encouraged.

Janet must acquire her RVT credentials by March 1st 2013 in order to comply with 2012 job description.

Janet has made great efforts toward the end of the year to become a team player concerning all of the changes during the department merger this past year.

Exhibit H

# WINTHROP-UNIVERSITY HOSPITAL
# PERFORMANCE IMPROVEMENT RE-EVALUATION

**Job Title: Sonographer**

**Name: Janet Kronemberg**

**ID Number 13053**

**Date of Re-Evaluation**

## INSTRUCTIONS

1. Complete *Re-Evaluation,* include specific performance standard competency code (ex. PS1, CS5, etc.)
2. *Re-Evaluation* should be reviewed with employee.
3. Following review, send original to Human Resources.  Maintain copy of *Re-Evaluation* in employee department file

| Validation Code | | Rating Scale | |
|---|---|---|---|
| 1. Observation | 5. Press Ganey | 1. Meets Standard/Competency | |
| 2. Chart/Record/File Review | 6. Articulation | 2. Does not meet Standard/Competency | |
| 3. Demonstration | | | |
| 4. Test | | | |

| Standard / Competency | Validation Code | Rating Scale | Comments |
|---|---|---|---|
| | 1,2,3,6 | 2 | Competancy-Multiple errors utiizing computer systems and following policies. Not completing tests in IDX, not entering notes in IDX. Making multiple changes to preliminary results in OAS. Observed not following critical test result policy. Failure to place preliminary result in OAS.Insubordination-Multiple occasions documented and witnessed by mangers and administrators. Direct insubordination on April 3, 2012 when counseled to not alter preliminary medical report, immedialtly after counseling changed preliminary results.Discourteous Treatment-Multiple accounts documented and observed toward co-workers and manager. Attendance Policy- Verbal warning presented about not adhering to Department attendance policy. Presented in October 2011. |

## EMPLOYEE COMMENTS

This Re-Evaluation has been reviewed with me.  I have the following comments:

_____

_____

_____

_____

## SIGNATURES

DATE: _____

DATE: 5/7/12

5/7/2012

*(Employee Signature)*

Patric Ville Ultrasound Manager

Tim Burns

6. Othe

(Evaluator Signature)

(Print Name)/Title

Exhibit I

# WINTHROP-UNIVERSITY HOSPITAL
# EMPLOYEE JOB DESCRIPTION AND
# REPORT ON PERFORMANCE AND COMPETENCY

| Job Title: | Registered Diagnostic Medical Sonographer |
| Name: | Janet Kronemberg |
| Date of Hire: | 6/3/1996 |
| ID Number: | 13053 |

THIS REPORT REFLECTS CALENDAR YEAR _____ 2013

OVERALL PERFORMANCE RATING - N ℐ

## INSTRUCTIONS

1. Create Report on Performance and Competencies each year.
2. Develop/update performance standards based on job description, goals, projects, etc.
3. Develop update competencies (including cultural competencies) based on job description.
4. Complete *Report* throughout the calendar year as standards/competencies are observed/evaluated.
5. Report should be reviewed with employee between November-February time period.
6. Following review, send original to Human Resources. Maintain copy of *Report* in employee department file.

## CREDENTIAL VERIFICATION

1. *License Type:RVT    License #:    Exp. Date: 12/31/2014
2. *Certification(s):
   Type:    Exp. Date:
   Type:    Exp. Date:
   Type:    Exp. Date:
   *(Attach copies of new or renewed license, registration or certification)*

## PERFORMANCE PLAN INITIATED

☒ Yes    ☐ No

Re-evaluation Review Date: Stated on page 2 of Performance Improvement Plan

## EMPLOYEE COMMENTS

This Report on Performance and Competency has been reviewed with me. I have the following comments: _____

_____

## SIGNATURES

DATE: _____

DATE: 2/11/14

_____
(Employee Signature)

_____
(Evaluator Signature)

_____
(Print Name)/Title

Regina Driscoll 2/11/2014

Ms. Kronemberg refused to initial Boxes and sign overall Standard.
evaluation. After explaining that she can rebut here too. She still refused. RD

## JOB DESCRIPTION
**TITLE:  Registered Vascular Diagnostic Medical Sonographer**
**DEPARTMENT: 740 Sonography: Radiology**

**A.  Summary:** The Diagnostic Medical Sonographer is responsible for the independent operation of sonographic equipment, and for performing and communicating results of diagnostic examinations using sonography. The Diagnostic Medical Sonographer is responsible for daily operations of the sonographic laboratory, patient schedule, equipment maintenance, the report of equipment failures, and quality assessment (QA). The sonographer maintains a high standard of medical ethics at all times and is self-motivated to increase level of understanding and knowledge of the field, disease, and new procedures as they evolve.

**B.  Reports to:** Sonographer reports directly to ultrasound manager and radiology administrator manager. The ultrasound manager reports to the radiology assistant administrator who reports to radiology administrator.

**C.  Qualifications:**

   1.  **Education:** Graduation from an accredited two year ultrasound program. College degree preferred.

   2.  **License/Certification:** Active credential by American Registry of Diagnostic Medical Sonographers (ARDMS) in vascular technology (RVT). Credential of Vascular Specialist (RVS) through Cardiovascular Credentialing International (CCI) would be considered, requiring the RVT credential be obtained within one year of hire date.

   3.  **Years Experience:** Three to five years experience in vascular scanning preferred.

   4.  **Skills:**
      Ability to effectively operate sonographic equipment.
      Ability to evaluate sonograms in order to acquire appropriate diagnostic information.
      Ability to follow established departmental procedures.
      Ability to work efficiently and cope with emergency situations.
      Emotional and physical health sufficient to meet the demands of the position.
      Strength sufficient to: lift some patients, move heavy equipment on wheels (up to approximately 500 lbs), and to move patients in wheelchairs and stretchers.
      Ability to maintain prolonged arm positions necessary for scanning.

| Validation Code | | | Rating Scale | |
|---|---|---|---|---|
| 1. Observation | 4. Test | | E- Exceptional | SO- Solid |
| 2. Chart/Record/File Review | 5. Articulation | | ST- Strong | NI- Needs Improvement |
| 3. Demonstration | | | | |

| A.   Performance Standards | Criteria | Validation Code | Rating Scale | Comments |
|---|---|---|---|---|
| PS – 1 Operates Ultrasound equipment to take diagnostic images of specific body areas/parts as ordered | • Produces diagnostic images for interpretation by the radiologist<br>• Demonstrates a thorough knowledge of Ultrasound equipment. | 2 | NI | Is not able to follow protocols well. Improvements can be made with proper annotations, diseasse specifications and calculation placement. Does not demonstrate a thorough knowledge of the Ultrasound equipment. Observing others during down time and asking questions would be beneficial. |
| PS – 2 Prepares patient using proper positioning and/or immobilizing patients and giving them the proper instructions regarding the procedure. | • Quality review of the technologists images fall within the guidelines of departmental SOP.<br>• Technologist is observed to give clear and concise instruction to the patient before beginning an exam. | 1 | SO | Provides clear instructions to the patients. Instructions/reminders were provided to ensure exams were not done in wheelchairs this past year. |
| PS – 3 Accurately utilizes the PACS system to make images available to the radiologist for interpretation. | • Technologist creates a minimum number of exceptions. | 2 | NI | Multiple incidents over the year with following PACS correction forms and handwriting corrections on paperfilm and not correcting in PACS. |
| PS – 4 Accurately utilizes the Radiology Information System | • Enters proper exam coding.<br>• Arrives and completes exams in a timely fashion. | 2 | NI | Abilities on RIS system cannot be made at this time. OAS and Apollo: Report entry in OAS was removed again this year when policy states sonographers are not to. Patient safety is a concern. Improvement is needed when creating reports in Apollo, Dr. Wain has also voiced a concern prompting a review of all sonographers reports. |
| PS – 5 Assists in the care and maintenance of facilities, equipment and supplies | • Reports any equipment problems or malfunctions to the supervisor in a timely fashion. | 3 | SO | Has reported concerns with equipment and is improving with notifying mangers via email and keeping records of events. |
| PS – 6 Instructs and supervises ultrasound students in clinical practicum | • Works with the ultrasound student to perform exams as well as performing individual image evaluation. | 3 | SO | Does well at encouraging students to scan and interact with patients. |

| Core/Value Standards - Rating Scale | |
|---|---|
| E- Exceptional<br>ST- Strong | SO- Solid<br>NI- Needs Improvement |

| Core /Value Standards | Rating Scale | Comments |
|---|---|---|
| **Quality**<br><br>Supports and promotes a Just Culture. Follows all patient safety and quality job requirements. Demonstrates knowledge and actively participates in patient safety initiatives. | NI | Concerns with reporting errors and errors with images as they pertain to patient safety. |
| **Customer Service / Patient Centered Excellence**<br><br>Makes service and quality excellence a top priority. Demonstrates the Must-Haves: Welcome People, Use Key Words at Key Times, Help in any way You Can. Contributes toward providing an excellent patient experience. | NI | Demonstration at the hospital setting has been acceptable. Improvemnet is needed in introducing herself to the patient before identifying them. Concerns have been raised concerning her interactions with patients at the outpatient facility. |
| **Teamwork**<br><br>Creates a climate that encourages and values the contributions of team members. Actively offers and seeks cooperation to and from others. | NI | This value has been very inconsistant throughout the year, conitued improvement is needed. Does stay to complete cases ordered late in the day when needed. |
| **Accountability**<br><br>Demonstrates responsibility for own job practice. | NI | Often will reference others when her job practice is reviewed instead of listening and discussing how to improve functions. |
| **Initiative**<br><br>Willingly assumes other duties and tasks as assigned. Volunteers for additional tasks and assignments. Identifies opportunities for improvement. | SO | Performs tasks when asked. Does not sign up for open shifts. |
| **Respect**<br><br>Demonstrates respect and compassion for the patient, families, WUH, colleagues and all external partners. Contributes to an environment that embraces diversity. | NI | Observations at the hospital demonstrate respect and compassion to her patients. Observations at the outpatient office demonstrate need for improvement. Observations at the hospital demonstrate need for improvement showing respect and compassion to her colleagues and external partners. |
| **Integrity**<br><br>Demonstrates high ethical standards. Is honest, reliable and sincere relative to job. | NI | Reviewing availability, actions and attitudes toward patients and colleagues this past year. |
| **Empathy**<br><br>Demonstrates ability to understand/recognize a situation from the standpoint of the customer, patient, or internal/external business partner, and take an active interest in assisting with their concern. | SO | Genuine concern for her patients. |

| Compliance Standards - Rating Scale | |
|---|---|
| M – Meets Standard | NM – Does Not Meet Standard |

| Compliance Standards | Rating Scale | Comments |
|---|---|---|
| **Availability**<br><br>Maintains an acceptable level of attendance (absences and lateness) and follow policies for accurately recording time worked. | NM | In August had reached 6 sick calls for the past 12 months a violation of the Radiology attendance policy. Also at the maximum allowance for the 6 month policy. |
| **Regulatory/ Job Requirements**<br><br>Demonstrates responsibility for completing Annual Health assessment, TB testing, Fit Testing, Flu Vaccine, Annual training update and all other required trainings. Maintains current licensure/certification as required by job and all other annual requirements and competencies for assigned job. | M | Took multiple reminders to comply with FLU requirement. |
| **Safety**<br><br>Follows safety procedures; recognizes unsafe acts or conditions; reports safety issues to supervisor. | NM | Concerns with data entry errors, image storage (PACS error policy) and work arrival. |
| **HIPAA/ Confidentiality / Security / Corporate Compliance**<br><br>Understands and respects the confidentiality and security of employee and patient information. Understands and adheres to the Hospital's Code of Conduct. | M | |
| **Adherence to Policy / Procedures**<br><br>Adheres to dress code including wearing Hospital ID and all other policies and procedures. | NM | Improvement is needed in adhering to hospital and department policies. Numerous duty to follow procedural rule incidents this past year such as attendance, work arrival, PACS procedures, communication, employee conduct. |

| Validation Code | | Rating Scale | |
|---|---|---|---|
| 1. Observation | 4. Test | E- Exceptional | SO- Solid |
| 2. Chart/Record/File Review | 5. Articulation | ST- Strong | NI- Needs Improvement |
| 3. Demonstration | | | |

| Population Served Competency | | | Criteria | Validation Code | Rating Scale | Comments |
|---|---|---|---|---|---|---|
| ☐ Neonates | ☐ Infants | ☒ Pediatrics | | 1 | SO | |
| ☒ Adolescents | ☒ Adults | ☒ Geriatrics | • Consistently provides care based on age specific criteria. | | | |
| • Demonstrates ability to identify physiologic, psychosocial and safety needs of the patient population served, relative to job. | | | | | | |

| Performance Improvement Plan (*if applicable*) |
|---|

| Standard / Competency | Recommendations | Review Date |
|---|---|---|
| | See PIP  | |

**Annual Goals and Recommendations**

Continued education in the field of vascular ultrasound with special attention to the exams performed in the lab.
Complete 5 ultrasound dedicated lectures and /or continuing on-line education sessions selected by your manager.
Compliance with the ARDMS requirements in order to be credentialed by them.
All annual requirements must be completed by May 2014: Annual Update, Employee Health Assesment & PPD; Flu Vaccine & N95 Resp Fit Test as available.
Pay close attention to exams being ordered. Ensure proper indications and history are provided and documented.
Take active roll in learning all exams performed in the ultrasound lab.
Quality communication among colleagues and manager.

Page 4 of 5



# WINTHROP
## University Hospital

### Your Health Means Everything.

## PERFORMANCE IMPROVEMENT PLAN

The Performance Plan below has been developed to assist you in improving your work performance to an acceptable level. Problems identified and previously discussed during the performance appraisal process, during various counseling sessions, and previous disciplines (including a final written warning issued on October 7, 2013) have been expanded upon to provide you with a framework within which to achieve desired objectives.

Definition of Deficiencies

The following areas from your job description were identified as below standards:

1. Ability to follow departmental procedures.
2. Ability to work efficiently and cope with emergency situations.
3. Ability to evaluate sonograms in order to acquire appropriate diagnostic images.
4. Ability to effectively operate sonographic equipment.

Measurable Improvement Goals

- Must consistently communicate effectively, efficiently, clearly, concisely and professionally with all personnel.
- Accept constructive criticism, without inappropriate reactions, including verbal outbursts and insubordinate responses to manager as outlined in 2012 PIP.
- Must take measure to ensure patients' medical records recorded in Radiology are accurate and adhere to the Radiology guidelines.
- Appropriate exam protocols are to be utilized along with the correct exam as ordered by the clinician with proper indication.
- Is expected to report to work at her regularly scheduled time and date and be able and prepared to work in adherence with the Radiology Attendance Policy.
- Employee will follow all oral and written policies, procedures, directives, and instructions communicated from management as discussed in final written warning in October 2013.

Evaluations and Feedback

Patrice Villa, Regina Driscoll and Janet Kronemberg will meet on a bi-weekly basis for a three
month period to respond to the requirements listed above and to receive performance feedback.
These meetings will be scheduled for Thursdays @11am.

An end performance improvement evaluation will be completed no later than 90 days
from the signing of this performance improvement plan. If all above requirements are
successfully met, it is expected that you will continue to sustain improvement for the
duration of your employment.

Consequences

Failure to successfully meet the above requirements at any time during the next three
months will result in termination of your employment.

*Manager*                                          *Date*

_____          ___2/11/14___

*Employee*                                         *Date*

___Refused to Sign___                   _____

*Administrator*                                    *Date*

___Regina Driscoll___                   ___2/11/14___

Ms. Janet Kronemberg at first refused to read the whole PIP. Once explained
to her that she is required to in order to continue her employment she read
the last page and refused to sign it. Ms Kronemberg insisted she needs
her lawyer to review this first. Ms Kronemberg was informed if this
PIP was in place to help her improve her performance to acceptable
level. Ms. Kronemberg refused to acknowledge the PIP or sign it even
after she was asked if she would be able to abide by it.

# EXHIBIT J

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANET KRONEMBERG, | **DOCKET NO.: CV-15-3235** |
| Plaintiff, | **(LDW)(AYS)** |
| - against – | |
| WINTHROP UNIVERSITY HOSPITAL, PATRICE VILLA, in her office and individual capacity, ENRICO PEREZ, in his official and individual capacity, | **AMENDED COMPLAINT** |
| Defendants. | *JURY TRIAL DEMANDED* |

PLAINTIFF, JANET KRONEMBERG, by and through her attorneys, THE LAW

OFFICES OF FREDERICK K. BREWINGTON, as and for her Amended Complaint filed

with permission of the Court against the Defendants, states and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action seeking monetary relief (including past and on going

economic loss), injunctive relief, declaratory judgment, compensatory and punitive

damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended),

42 U.S.C. §1981, New York State's Human Rights Law, Executive Law § 296 on the basis of

Plaintiff's race and color, and retaliation.

2.      Specifically, the Plaintiff alleges that the collective Defendants negligently,

wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive

Plaintiff of her employment, position, title, benefits, and pay through discrimination, retaliation, misrepresentation, misinformation, harassment and character assassination.

3.     Said acts were done knowingly with the consent and condonation of the WINTHROP UNIVERSITY HOSPITAL,  Defendant PATRICE VILLA, in her official and individual capacity, and ENRICO PEREZ, in his official and individual capacity, with the express purpose of removing and silencing the Plaintiff, and generally violating her rights as protected by the United States and New York State Constitutions, and Federal, State, and local statutes, rules and regulations.

## JURISDICTION AND VENUE

4.     The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

5.     This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C.§ 1367.

6.     Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiff's residence, and the Defendant is a Corporation conducting business in the State of New York, within the various counties of New York, including but not limited to Nassau and Suffolk.

7.     Prior hereto, on April 15, 2014 , Plaintiff filed a Charge of Discrimination 10168286 against Defendant WINTHROP UNIVERSITY HOSPITAL with the New York State Division of Human Rights (hereinafter "NYSDHR") alleging her wrongful termination

2

due to the Defendants' racial animus.  Plaintiff also cross filed a charge with the United

States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC

Charge No. 16G-2015-01163.

8.      On October 9, 2014, the NYSDHR found Probable Cause against Defendant

WINTHROP UNIVERSITY HOSPITAL.

9.      Plaintiff requested, and on December 1, 2014, the Honorable Edward Luban,

ALJ of the New York State Division of Human Rights,  issued a Recommended Order of

Dismissal for Administrative Convenience.

10.     On March 5, 2015 Plaintiff received a *Notice of Right to Sue Within 90 Days*,

issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2015-01163

(copy is annexed hereto Exhibit A).  As of the filing date of the original complaint, ninety

days from the date of receipt of the *Notice of Right to Sue* had not yet passed.

## PARTIES

11.     Plaintiff, JANET KRONEMBERG (hereinafter "PLAINTIFF" or MS.

KRONEMBERG), at all times relevant in this Complaint, is an African-American female,

and a citizen of the United States of America.  Plaintiff resides in the County of Suffolk,

State of New York, who at all times complained of herein was an employee of WINTHROP

UNIVERSITY HOSPITAL.

3

12.     At all times relevant in this Complaint, Defendant WINTHROP UNIVERSITY HOSPITAL (hereinafter "WINTHROP" and/or "HOSPITAL"), is a health facility, and domestic not for profit corporation, doing business in 222 Station Plaza North, Mineola, Nassau County, State of New York.

13.     At all times relevant in this Complaint, Defendant PATRICE VILLA (hereinafter "VILLA") sued here in her official and individual capacity, is a Caucasian-American female, and employed by Defendant WINTHROP as an Ultrasound Manager in Defendant's Radiology Department, and was Plaintiff's immediate supervisor.

14.     At all times relevant in this Complaint, Defendant ENRICO PEREZ (hereinafter "PEREZ") sued here in his official and individual capacity, is upon information and belief a Caucasian-American make, and employed by Defendant WINTHROP as the Administrative Director of the Department of Radiology, and was Defendant VILLA's immediate supervisor.

## FACTUAL ALLEGATIONS

15.     MS. KRONEMBERG began her employment with Defendant WINTHROP in or about June 1996 as a Registered Vascular Technologist in the Hospital's Vascular Lab.

16.     At all times during her employment, Plaintiff maintained a stellar employment record, which included positive reviews and evaluations.

4

17.     From January 1, 2011, to June 23, 2014, WINTHROP had at least twenty one (21) technicians.  Of that number, fourteen (14) were white, three (3) were Asian/Pacific Islander, two (2) were Black, one (1) was Hispanic and two (2) were other or not specified.

18.     Ms. Kronemberg was well qualified to do her job.  Prior to 2011, when PLAINTIFF was placed under a new supervisor, she had 18 years of satisfactory performance and service as a professional.

19.     Ms. Kronemberg's job performance is given by two Doctors who have worked closely with Ms. Kronemberg; Dr. George Hines, Chief of Vascular surgery at Winthrop, and Dr. Reese Wain, Division of Vascular Surgery at Winthrop, gave Ms. Kronemberg positive employee recommendations throughout Ms. Kronemberg fifteen-year tenure at Winthrop Hospital.

20.     In or about January 2011, the Hospital merged the Vascular Lab with the Radiology Department.

21.     In or about February 2011, MS. KRONEMBERG was transferred to the Radiology Department, but retained her title as a Registered Vascular Technologist.

22.     It was at this time that Defendant VILLA became Plaintiff's supervisor. Plaintiff began to experience discriminatory treatment on account of her race and color upon VILLA's hiring as Plaintiff's supervisor.  Defendant VILLA intentionally targeted PLAINTIFF on account of her race and color, and because she opposed the resulting

5

discriminatory and retaliatory practices of Defendants. Upon information, and belief, none of the other, white technicians were subjected to the level of abuse, over documentation, discrimination, and retaliation to which PLAINTIFF was subjected.

23.     Defendants subjected PLAINTIFF to a hostile work environment that was ongoing from February 2011, when Defendant VILLA became PLAINTIFF's immediate supervisor, until March 2014, when PLAINTIFF was terminated by Defendant VILLA.

24.     Defendants' discriminatory and retaliatory acts created an oppressive environment for MS. KRONEMBERG in her work place and this constant mistreatment at the hands of Defendant VILLA contributed to the manufacture of a hostile work environment.  This oppressive and constant mistreatment was conducted continually throughout her interaction with MS. KRONEMBERG both, initially in discrimination, and later in retaliation, for MS. KRONEMBERG's complaints concerning VILLA's oppressive, discriminatory, retaliatory, and constant mistreatment of Plaintiff.  These actions were directly taken by Defendant VILLA to produce a hostile work environment for Ms. KRONEMBERG.

25.     It is, and was, Plaintiffs' belief that she was being subjected to a hostile work environment, was being discriminated and retaliated against by Defendant VILLA based on the events and actions leveled against her:

- Defendant VILLA denied PLAINTIFF'S request that she not work on December 25, 2011

6

- Defendant VILLA altered PLAINTIFF's 2011 performance evaluation, and failed to provide PLAINTIFF with a copy of the evaluation;

- Defendant VILLA ignored PLAINTIFF's seniority by asking other personnel to perform duties for which PLAINTIFF was responsible;

- Defendant VILLA enrolled PLAINTIFF in staff development training that others were not required to complete;

- PLAINTIFF did not receive a salary increase for 2012, during which her initial complaint with the New York State Division of Human Rights was filed

- Defendant VILLA required PLAINTIFF to take a second registry exam for her credentials after she had already acquired them from Cardiovascular Credentialing International (CCI);

- PLAINTIFF was placed on a Performance Improvement Plan (PIP) by Defendant VILLA, but was also provided a new hire RVT to train at approximately the same time;

- Defendant VILLA's success in having PLAINTIFF suspended in February 2013 for failing to sign an evaluation despite the absence of any WINTHROP rule or policy to that effect;

- The absence of the suspension of any similarly situated WINTHROP employee for failing to sign an evaluation;

- The stark contrast between PLAINTIFF's evaluations and statements by other WINTHROP employees of her exemplary job performance prior to Defendant VILLA's arrival in February 2011 as PLAINTIFF's supervisor and the subsequent evaluations by Defendant VILLA that harshly criticized PLAINTIFF's work and placed her on a PIP;

- Requiring Ms. Kronemberg to get certified twice;

- Issuing continuous write ups and poor evaluations despite satisfactory patient care, and;

7

- Requiring Ms. Kronemberg to complete the PIP program despite Ms. Kronemberg 's successful twenty-five-year record as a RVT and successful fifteen-year tenure at Winthrop University Hospital.

26.     As a result of Defendant VILLA's discriminatory/retaliatory treatment, PLAINTIFF filed a complaint with Defendant HOSPITAL's Human Resources Department in November 2011 and March 2012. She received no response.

27.     Although MS. KRONEMBERG complained to Defendants about this treatment, no action was taken by Defendants PEREZ or WINTHROP, forcing PLAINTIFF to first file a Complaint with the New York State Division of Human Rights on or about June 6, 2012, State Division of Human Rights Case No.: 10155470. On December 6, 2012, the Division reached a No Probable Cause determination.

28.     One month subsequent to the filing of this Human Rights Complaint with the New York State Division of Human Rights, in July of 2012, PLAINTIFF informed Defendant VILLA that she had taken the exam necessary to acquire her Registered Vascular Technologist/Specialist credentials. Therefore Defendants VILLA and WINTHROP knew Plaintiff had acquired this certification from Cardiovascular Credentialing International (CCI), rather than through the American Registry of Diagnostic Medical Sonographers (ARDMS) who they later stipulated as the requisite agency, while Plaintiff's New York State Human Rights Complaint was pending.

8

29.     PLAINTIFF was informed of the need to acquire the certification from ARDMS only two (2) months after the conclusion of PLAINTIFF's first complaint with the New York State Department of Human Rights.

30.     Essentially, it was not until the last possible moment, when Defendants WINTHROP and VILLA knew that PLAINTIFF would not be able to acquire the requisite certification in time for the March 1, 2013 deadline Defendants had set that Ms. Kronemberg had her previously accepted credentials rejected. Only after Defendants thought they were free of he shadow of he proceeding then before the Division of Human Rights did they take this action.  They did so with the intent to make Plaintiff's work environment unwelcome and hostile and knowing that doing so would allow Defendants to subject Ms. Kronemberg to discipline.  It was then that they informed PLAINTIFF that said certification needed to be acquired from ARDMS.

31.     These actions and the subsequent suspension of PLAINTIFF for failing to acquire the certification before the deadline were taken directly in retaliation for PLAINTIFF filing a complaint with the New York State Division of Human Rights.

32.     Since the filing of her first complaint with the Division of Human Rights, Defendant VILLA has created a discriminatory hostile work environment for PLAINTIFF, and has continued to retaliate against PLAINTIFF, including, but not limited to items listed in paragraph 25 above including but not limited to  issuing continuous write ups for

9

alleged minor infractions in an effort to terminate PLAINTIFF's employment.

33.     Since the filing of the Division of Human Rights Complaint of discrimination, Defendants have denied Plaintiff equal terms, conditions and privileges of employment, on account of Plaintiff's race and color. Defendants have conducted these acts in retaliation for Plaintiff's complaints concerning discrimination and retaliation in the workplace. Both the continuing discrimination and retaliation against Plaintiff were in response to Plaintiff's opposing discrimination, retaliation, and practices resulting in a hostile work environment.

34.     Those practices included but were not limited to negative evaluations leading to her termination on March 11, 2014, superfluous demands others similarly situated were not subjected to (i.e. being forced to take staff development classes and a second registry exam), the filing of her DHR and SDHR complaints, and her reports of discrimination and retaliation to Defendant's H.R. Department.

35.     In 2011, all employees in the Radiology Department were instructed that they had one year to take the registry exam to obtain either the Registered Vascular Technologists (RVT) or Registered Vascular Specialist (RVS) credentials. This was to be done no later than March 1, 2013.

36.     At no time did Defendants specify through which institution the credentials were to be acquired.

37.     In July 2012, PLAINTIFF took the exam,  and acquired her credentials through Cardiovascular Credentialing International (CCI) – well before the deadline of March 1, 2013.

38.     In July 2012, PLAINTIFF informed Defendant VILLA that she had taken the exam, and acquired her credentials.

39.     Cardiovascular Credentialing International is a recognized diagnostic imaging society, and credentials through CCI have previously been recognized by Defendant WINTHROP, and is recognized in the medical field.

40.     CCI is an independent not-for-profit corporation established for the purpose of administering credentialing examinations as an independent credentialing agency. CCI began credentialing cardiovascular professionals in 1968.

41.     CCI is governed by a Board of Trustees and a Board of Advisors. The CCI Board of Advisors is comprised of representatives nominated by the following organizations to represent their cardiovascular specialty field:

- American College of Cardiology (ACC)
- American College of Phlebology (ACP)
- American Society of Echocardiography (ASE)
- Heart Rhythm Society (HRS)
- Society for Cardiovascular Angiography and Interventions (SCAI)
- Society of Diagnostic Medical Sonography (SDMS)
- Society of Invasive Cardiovascular Professionals (SICP)
- Society for Vascular Ultrasound (SVU)

11

42.     In June of 2008, CCI was accredited by the American National Standards Institute under the ANSI/ISO/IEC 17024 Program. The ANSI accreditation was awarded to CCI's RCES, RCIS, RCS, and RVS certification programs. The CCT, CRAT, RCCS, and RPhS certification programs were approved for ANSI/ISO/IEC 17024 accreditation in December 2011. Click here to see the details.

43.     As stated above, although Defendant VILLA was aware eight (8) months prior that PLAINTIFF had acquired her credentials through CCI, it was not until two (2) months after the conclusion of PLAINTIFF's complaint with the New York State Division of Human Rights that PLAINTIFF received notice, in February of 2013, from Defendant VILLA that the credentials PLAINTIFF had obtain through CCI, were unacceptable, and that PLAINTIFF had to re-take the exam and obtain her credentials through the American Registry of Diagnostic Medical Sonographers (ARDMS).

44.     PLAINTIFF was the only individual who was being forced to take this exam a second time.

45.     PLAINTIFF again informed Defendant VILLA that she had already taken the exam and that the she was qualified and certified. Being aware that both CCI and ARDMS offered the same credentialing, PLAINTIFF expressed her belief that these actions were retaliatory and discriminatory, and objected to having to take the examination a second time.

12

46.     PLAINTIFF was then suspended for the period March 1, 2013 and March 31, 2013. With this punishment, in order to be reinstated, PLAINTIFF agreed to take the exam again at ARDMS. PLAINTIFF passed said exam and was reinstated.

47.     Thereafter, Defendant VILLA continuously gave PLAINTIFF write-ups for alleged minor infractions such as computer input errors. Upon information and belief, other employees, who were white and similarly situated, actually committed infractions of WINTHROP policy, but were not subject to this treatment. PLAINTIFF was the only employee being subjected to this disciplinary action.

48.     As stated previously, prior to Defendant VILLA becoming PLAINTIFF's supervisor, PLAINTIFF had stellar evaluations. Defendants asserted as reasons for PLAINTIFF's suspension and/or termination, that PLAINTIFF had issues working with co-workers, but has only cited one individual e-mail from a Dr. who had limited interaction with PLAINTIFF. Furthermore, they have failed to produce this e-mail. In contrast, PLAINTIFF has produced multiple statements and evaluations attesting to her valuable performance and contributions as an employee of WINTHROP.

49.     In or about February 2014, PLAINTIFF received yet another negative and disparaging evaluation and *Performance Improvement Plan* from Defendant VILLA indicating that PLAINTIFF was not qualified and inadequately performed her job duties. The issues with job performance stated in this evaluation revolved primarily around

13

computer error, not patient care, as stipulated by Defendants as the reason for PLAINTIFF's suspension.  PLAINTIFF had previously received multiple satisfactory reviews from essentially all parties except Defendant VILLA in regards to patient care.

50.    PLAINTIFF informed Defendant VILLA that the evaluation was not accurate, took exception to this evaluation and refused to attach her signature to it.

51.    On or about February 11, 2014, MS. KRONEMBERG was advised by Ms. VILLA that PLAINTIFF was being suspended, without pay, for refusal to sign the evaluation.  Defendant VILLA instructed PLAINTIFF to turn in her employee badge.

52.    Although she requested, PLAINTIFF was given nothing in writing to explain on what authority, rule, regulation or power, she was being suspended, nor was she informed of what policy of WINTHROP she had violated resulting in her suspension.

53.    Upon information and belief, there is no rule in Defendant WINTHROP's employee handbook or policy that would allow an employee suspension for failure to sign an evaluation.  The arbitrary, discriminatory, and retaliatory nature of Defendant's decision to suspend PLAINTIFF is evident from the absence of any action taken in May of 2012 when PLAINTIFF refused to sign a similar evaluation.

54.    In or about May 2012, prior to PLAINTIFF filing her 2012 Complaint with the Division of Human Rights, Defendant VILLA authored a similar evaluation, with which PLAINTIFF did not agree with, and did not agree to sign.  However, at that time

PLAINTIFF was not suspended for failure to sign the evaluation. It is PLAINTIFF's position that Defendant VILLA's action regarding the subsequent evaluation was in retaliation for complaining about the discrimination she had been subjected to by Defendant VILLA.

55.     Defendants have also failed and refused to identify any other instances where similarly situated employees were suspended for refusing to sign an evaluation.

56.     Defendant's contentions that the suspension was also a result of PLAINTIFF's refusal to abide by the PIP is contrary to both the positive performance reviews PLAINTIFF had previously received and the request that PLAINTIFF train a new hire RVT at approximately the same time. This demonstrates the nature of Defendant's claims.

57.     On or about February 13, 2014 PLAINTIFF received a telephone call from Ms. Roseanne Caldon, Manager, Employee Relations, advising PLAINTIFF to return to work on Friday, February 14, 2014. Ms. Caldon further told MS. KRONEMBERG that PLAINTIFF did not have to sign the evaluation.

58.     Believing that the suspension had been lifted, on February 14, 2014 when PLAINTIFF arrived at Defendant WINTHROP she learned that what she had been told by Ms. Caldon was inaccurate; her suspension was not lifted, and she was not there to return to work, as she was misled to believe. PLAINTIFF was instructed to meet with Defendant

15

PEREZ.

59.     PLAINTIFF then spoke with Defendant PEREZ, who informed PLAINTIFF that she would not be returning to work.  Despite PLAINTIFF having filed a previous complaint, Defendant PEREZ then instructed PLAINTIFF to write a list of what PLAINTIFF found to be problems with the Radiology Department.  At that time, Defendants had done nothing to address or remedy any of the things about which Plaintiff had complained.

60.     In response, PLAINTIFF stated she needed time to gather dates and times. Instead of allowing Ms. Kronemberg the reasonable time to respond further retaliation was committed.  In response Defendant PEREZ stated: "**then you can go home and I will call you on Tuesday [February 18, 2014] and you will get paid for 1 hour today.**"

61.     PLAINTIFF stated to Defendant PEREZ that she was instructed by Ms. Caldon to come into work on that date. In response Defendant PEREZ stated "I apologize, but you will not be working today." PLAINTIFF was shocked and horrified about this continuation of the retaliatory treatment and making her workplace even more hostile.

62.     At that meeting, Defendant PEREZ did not provide anything in writing regarding the reason for PLAINTIFF's suspension, but gave PLAINTIFF a copy of the contested evaluation and *Performance Improvement Plan* (PIP).

16

63.     Defendant PEREZ furthered the discrimination and retaliation, and failed to intervene on PLAINTIFF's behalf, failed to follow rules and protocol, and condoned and re-enforced Defendant VILLA's unlawful actions.

64.     On March 11, 2014, PLAINTIFF received a letter from Defendant VILLA terminating PLAINTIFF from her position at WINTHROP without any further explanation.

65.     Subsequent to her filing of the original complaint of discrimination in June 2012, MS. KRONEMBERG has been retaliated against with a barrage of items, including, but not limited to:

- daily verbal abuse, and false accusations that were regular and aimed at disrupting PLAINTIFF'S employment.
- rejecting PLAINTIFF's certification.
- suspending PLAINTIFF even though she was certified.
- requiring PLAINTIFF to get certified twice.
- depriving PLAINTIFF of access to her job and pay.
- issuing continuous false write ups and poor evaluations, despite satisfactory patient care and performance.
- creating special and different rules to apply to PLAINTIFF.
- requiring PLAINTIFF to complete the PIP program despite MS. KRONEMBERG's successful twenty-five (25) year record as an RVT, and successful eighteen (18) year tenure at Defendant HOSPITAL.
- misleading PLAINTIFF about her work status

66.     The wave of warnings, re-evaluations, verbal reprimands, and *Performance Improvement Plans* were a pattern of false over documentation, discrimination and retaliation against PLAINTIFF to manufacture and create a false record of PLAINTIFF'S abilities and performance. These actions were not taken against similarly situated white

17

employees of Defendant WINTHROP.

67.     When PLAINTIFF raised concerns about this constant level of abuse, over documentation, discrimination, and retaliation to Human Resources, her complaints and concerns were not investigated by Defendant's Human Resources Department.

68.     Defendants' pattern of retaliatory acts were an immediate response to MS. KRONEMBERG's initial Complaint, as evidenced by the drastic change in PLAINTIFF'S performance reviews and actions, which included all evaluations after February 2011, and overall differential treatment of PLAINTIFF.

## AS AND FOR A FIRST COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e-RETALIATION

69.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 68 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

70.     The Defendants WINTHROP, VILLA and PEREZ, through their agents and employees, retaliated against the Plaintiff in her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, in retaliation for complaining about discrimination in the work place.

71.     Defendants treatment and actions against PLAINTIFF by over documenting, improperly supervising Plaintiff in a harsher manner than other similarly situated White

employees, thereby subjecting Plaintiff to wrongful and differential treatment as part of the retaliation. PLAINTIFF has been subjected to an ongoing pattern of intentional retaliation aimed at harming PLAINTIFF and bringing about manufactured reasons to suspend and terminate her.

72.    Plaintiff's employment was constantly being threatened. These actions were done to Ms. Kronemberg and were systematic as a pattern of abuse and retaliation.

73.    Since the filing of the Division of Human Rights Complaint of discrimination, PLAINTIFF has been retaliated against for exercising her right to oppose discriminatory practices including but not limited to negative evaluations leading to her termination on March 11, 2014.

74.    Since the filing of her complaint with the Division of Human Rights, Defendant VILLA has taken ongoing and regular wrongful actions, and intentionally created a hostile work environment for PLAINTIFF, and has continued to retaliate against PLAINTIFF, including, but not limited to issuing continuous write ups for alleged minor infractions in an effort to harm PLAINTIFF and to create a false record terminate PLAINTIFF's employment.

75.    In 2011, all employees in the Radiology Department were instructed that they had one year to take the registry exam to obtain either the Registered Vascular Technologists (RVT) or Registered Vascular Specialist (RVS) credentials.  There was no

stated place or test provider that limited PLAINTIFF from taking the exam through a qualified provider. This was to be done no later than March 1, 2013.

76.     At no time did Defendants specify through which institution the credentials were to be acquired. In July 2012, PLAINTIFF took the exam, and acquired her credentials through Cardiovascular Credentialing International (CCI) – well before the deadline of March 1, 2013.

77.     Although Defendant VILLA was aware that PLAINTIFF had acquired her credentials through CCI, it was not until February of 2013 that Defendant VILLA informed PLAINTIFF that the credentials she had obtain through CCI, were being rejected, and that PLAINTIFF had to re-take the exam and obtain her credentials through the American Registry of Diagnostic Medical Sonographers (ARDMS). PLAINTIFF was the only individual who was being forced to take this exam a second time.

78.     PLAINTIFF informed Defendant VILLA that she had already taken the exam and that the she was qualified and certified and, was once again being subject to abuse, discrimination and retaliation, therefore, PLAINTIFF complained and declined to take the examination a second time. Nothing was done about her complaint.

79.     Because PLAINTIFF refused to be abused, and advised she would not take the credentialing examination a second time, PLAINTIFF was summarily suspended for the period March 1,2013 and March 31, 2013. Under the threat of the loss of her livelihood,

20

in order to be reinstated, PLAINTIFF agreed to take the exam again at ARDMS. PLAINTIFF passed said exam and was reinstated.

80.     Thereafter, Defendant VILLA continuously gave PLAINTIFF write-ups for alleged minor infractions, such as computer input errors

81.     As part of the ongoing level of retaliation, in or about February 2014, none of PLAINTIFF's complaints had been acted upon by Defendant WINTHROP. Then, PLAINTIFF received yet another negative and disparaging evaluation and Performance Improvement Plan from Defendant VILLA indicating that PLAINTIFF was not qualified and inadequately performed her job duties.

82.     PLAINTIFF took great exception to this evaluation and declined to attach her signature to it.

83.     Without notice, on or about February 11, 2014, MS. KRONEMBERG was advised by Ms. VILLA that PLAINTIFF was being suspended, without pay, for refusal to sign the evaluation.

84.     Although she requested, PLAINTIFF was given nothing in writing to explain why her pay was being taken, and she was being suspended, nor was she informed of what policy of WINTHROP she had violated resulting in her suspension.

85.     PLAINTIFF again spoke with Defendant PEREZ, who informed PLAINTIFF that she would not be returning to work. Despite PLAINTIFF's previous complaints,

Defendant PEREZ then instructed PLAINTIFF to write a list of what PLAINTIFF were problems about the Radiology Department.

86.    In response, PLAINTIFF stated that she needed time to gather dates and times. In response Defendant PEREZ stated "then you can go home and I will call you on Tuesday [February 18, 2014] and you will get paid for 1 hour today."

87.    Defendant PEREZ failed in intervene on PLAINTIFF's behalf, failed to follow rules, protocol, condoned, and re-enforced Defendant VILLA's unlawful actions.

88.    On March 11, 2014, PLAINTIFF received a letter from Defendant VILLA informing terminating PLAINTIFF from her position at WINTHROP without any further explanation.

89.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within her employment, loss of income, loss of employment benefits, loss of professional opportunities, loss of reputation, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her personal and professional reputation.

90.    Because of Plaintiff's daring to object to her wrongful treatment on account of her race and/or color she has been subjected to abuse and mistreatment as detailed above and has been retaliated against and treated differently.

22

91.     As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE SECOND COUNT
### 42 U.S.C. § 1981- RACE AND COLOR DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION

92.     PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 91 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

93.     The above discriminatory pattern and practice based on race and color by Defendants WINTHROP, VILLA, and PEREZ, through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

94.     Defendants treatment of PLAINTIFF, as set for in paragraphs 1 through 68 of this Complaint, was solely based on PLAINTIFF's race and/or color, and in retaliation for PLAINTIFF complaining of discriminatory treatment. Defendant VILLA discriminated against PLAINTIFF by denying PLAINTIFF's request for time off, altering PLAINTIFF's 2011 performance evaluation, ignoring PLAINTIFF's seniority in designating tasks, enrolling PLAINTIFF in superfluous training, demanding PLAINTIFF take a second registry exam for her credentials, refusing to provide PLAINTIFF a salary increase in 2012,

23

placing PLAINTIFF on a PIP, suspending PLAINTIFF where other similarly situated employees would not be, subjecting PLAINTIFF to arbitrary evaluations based on personal animus, utilizing minor issues to prompt disciplinary action against PLAINTIFF, and generally supervising PLAINTIFF in demeaning, different, and harsher manner than she did similarly situated White employees, thereby subjecting PLAINTIFF to differential treatment. All of these acts served to create a hostile working environment for Ms. Kronemberg.

95.    Although PLAINTIFF complained of the discriminatory, hostile and disparate treatment to which she was subjected, Defendants, including PEREZ, sanctioned Defendant VILLA's treatment of Plaintiff by refraining from protecting PLAINTIFF from the aforementioned disparate treatment, and participating in PLAINTIFF's suspension and subsequent termination.

96.    Defendants focused their actions on making the work environment toxic and unwelcoming to Ms. Kronemberg. She was subjected to repeated acts of abuse that caused her extreme distress while in the work place.

97.    As a direct and proximate result of said acts, PLAINTIFF has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

24

98.     Because of PLAINTIFF's race and color she has been subjected to a hostile work environment, abuse and mistreatment as detailed above and has been treated differently than White individuals similarly situated.

99.     As a result of the Defendants' discriminatory acts, PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that PLAINTIFF is entitled to damages sustained to date and continuing in excess of the amount of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE THIRD COUNT
## and NYS EXECUTIVE LAW §296 -RACE AND COLOR <u>DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION</u>

100.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 97 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

101.    The Defendants WINTHROP, VILLA and PEREZ, through their agents and employees, discriminated, creating hostile work environment and retaliated against the Plaintiff in her employment based on Plaintiff's race and color, in violation of New York State Exectutive Law, and in retaliation for reporting said discrimination in the work place and the hostile work environment thus created.

102.   The above discriminatory pattern and practice based on race and/or color, hostile work environment and retaliation by Defendants WINTHROP, VILLA, and PEREZ, their agents and employees violates New York State Law, in particular New York State Executive Law §296 and its subparts.

103.   Defendants discriminated against PLAINTIFF by denying PLAINTIFF's request for time off, altering PLAINTIFF's 2011 performance evaluation, ignoring PLAINTIFF's seniority in designating tasks, enrolling PLAINTIFF in superfluous training, demanding PLAINTIFF take a second registry exam for her credentials, refusing to provide PLAINTIFF a salary increase in 2012, placing PLAINTIFF on a PIP, suspending PLAINTIFF where other similarly situated employees would not be, subjecting PLAINTIFF to arbitrary evaluations based on personal animus, utilizing minor issues to prompt disciplinary action against PLAINTIFF, and generally supervising PLAINTIFF in demeaning, different, and harsher manner than she did similarly situated White employees, thereby subjecting PLAINTIFF to differential treatment.  As a result of such treatment, PLAINTIFF has been subjected to a hostile work environment.

104.   Defendants began retaliating against PLAINTIFF shortly after the conclusion of her initial complaint with the New York State Division of Human Rights.  Two (2) months following the finding of no probable cause on December 6, 2012, in February of 2013, PLAINTIFF was informed that her certification through CCI would not be acceptable

26

for Defendants VILLA and WINTHROP. This was at the last possible moment, when defendants VILLA and WINTHROP were free from the shadow of the pending complaint, and knew PLAINTIFF would not be able to obtain the requisite certification from ARDMS, therefore becoming subject to disciplinary action by the Defendants. On information and belief, this action was taken in direct retaliation for PLAINTIFF's complaint with the New York State Division of Human Rights.

105.     PLAINTIFF's employment was constantly being threatened. PLAINTIFF was consistently and constantly in fear of losing her employment. PLAINTIFF was subjected to the fear of being terminated under false pretenses given Defendant VILLA's conduct toward PLAINTIFF. Upon information and belief no similarly situated White employee was treated in this manner.

106.     Defendants treatment of PLAINTIFF, as set for in paragraphs 1 through 68 of this Complaint, was solely based on PLAINTIFF's race and/or color, and in retaliation for PLAINTIFF complaining of discriminatory treatment. Defendant VILLA discriminated against PLAINTIFF by denying PLAINTIFF's request for time off, altering PLAINTIFF's 2011 performance evaluation, ignoring PLAINTIFF's seniority in designating tasks, enrolling PLAINTIFF in superfluous training, demanding PLAINTIFF take a second registry exam for her credentials, refusing to provide PLAINTIFF a salary increase in 2012, placing PLAINTIFF on a PIP, suspending PLAINTIFF where other similarly situated

employees would not be, subjecting PLAINTIFF to arbitrary evaluations based on personal animus, utilizing minor issues to prompt disciplinary action against PLAINTIFF, and generally supervising PLAINTIFF in demeaning, different, and harsher manner than she did similarly situated White employees, thereby subjecting PLAINTIFF to differential treatment. All of these acts served to create a hostile working environment for Ms. Kronemberg.

107. Although PLAINTIFF complained of the discriminatory, hostile and disparate treatment to which she was subjected, Defendants, including PEREZ, sanctioned Defendant VILLA's treatment of Plaintiff by refraining from protecting PLAINTIFF from the aforementioned disparate treatment, and participating in PLAINTIFF's suspension and subsequent termination.

108. Defendants focused their actions on making the work environment toxic and unwelcoming to Ms. Kronemberg. She was subjected to repeated acts of abuse that caused her extreme distress while in the work place.

109. As a direct and proximate result of said acts, PLAINTIFF has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

110. Because of PLAINTIFF's race and color she has been subjected to a hostile work environment, abuse and mistreatment as detailed above and has been treated differently than White individuals similarly situated.

111. All the actions referenced in the Facts above, and in Count One and Two, are violations of New York State Executive Law and Nassau County Human Rights Law.

112. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within her employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

113. Because of Plaintiff's race/color and disability she has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals in that Plaintiff has been treated as stated herein because of her race and color.

114. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of two million($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

July 1, 2016   Plaintiff requests judgment as follows:

   a.    First Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

29

b.   Second Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.   Third Cause of Action: in excess of two million ($2,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.   Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

e.   A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

f.   Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiff to be reinstated, and continue in the position from which Defendants' illegally terminated her; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

g.   An Order granting such other legal and equitable relief as the court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Hempstead, New York
July 1, 2016

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York  11550
(516) 489-6959

# EXHIBIT A

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

RECEIVED

| To: Janet Kronemberg<br>1416 Ackerson Blvd<br>Bay Shore, NY 11706 | From: New York District Office   MAR  5  2015<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004   LAW OFFICES OF<br>FREDERICK K. BREWINGTON |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2015-01163 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [X] | Other (briefly state)         Charging Pary wishes to pursue matter in Federal District Court. |

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_

Enclosures(s)

Kevin J. Berry,
District Director

March 2, 2015

(Date Mailed)

cc:

| WINTHROP UNIVERSITY HOSPITAL<br>Attn: Director of Human Resources<br>259 First Street<br>Mineola, NY 11501 | Johanna C. David, Esq.<br>Law Office of Frederick K. Brewington<br>556 Peninsula Boulevard<br>Hempstead, NY 11550 |
|---|---|

DOCKET NO.: CV-15-3235(LDW)(AYS)

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANET KRONEMBERG,

Plaintiff,

- against –

WINTHROP UNIVERSITY HOSPITAL,
PATRICE VILLA, in her office and individual
capacity, ENRICO PEREZ, in his official and
individual capacity,

Defendants.

## AMENDED AND COMPLAINT

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959